# Richmond

E. M. QUILLEN AND J. M. DARNELL V. G. N. TITUS.

April 10, 1939.

Record No. 2034.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*G. H. Branaman,* for the appellants.

*C. G. Quesenbery,.* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

In February, 1922, G. N. Titus and E. M. Quillen formed a partnership to operate a nursery business at Waynesboro, Virginia, with an agreed investment of $14,000. Under the terms of the agreement, Titus was the owner of three-fourths of the business, and being an experienced nurseryman, was the propagator of the nursery stock. Quillen was the owner of a one-fourth interest and was to perform certain ministerial duties. Each partner was to receive as salary the sum of $100 per month.

Under the terms of a contract bearing date July 21, 1924, Titus sold to J. M. Darnell one-third of this three-fourths interest in the partnership. After the admission of Darnell into the partnership, he was assigned the position of salesman, and the salary of each of the partners was fixed at $150 per month.

In 1926, Titus, on account of ill health, withdrew from active participation in the business and remained inactive until February, 1933, when at the instance of Quillen, his salary was cut off. This action resulted in strained relations between the partners, and on December 27, 1934, Titus filed his bill of complaint against Quillen and Darnell, praying for the dissolution of the partnership, that a receiver be appointed to take charge of the partnership affairs, that an accounting be ordered, and that complainant be reimbursed such sums as may be due him.

To the bill of complaint, Quillen and Darnell filed their answer, denying the allegations asserted therein.

No action was taken upon the bill, for the reason that on January 8, 1935, Titus, Quillen and Darnell entered into a written agreement whereby Titus sold his interest in the partnership to Quillen and Darnell, for the sum of $40,000, payable $5,000 in cash within ten days from date of agreement and the balance in seven annual installments bearing interest at the rate of six per cent, said debt to be secured by a deed of trust upon the property.

The contract contained provisions for the necessary transfers and conveyances to carry out the agreement, and also contained a clause which is the crux of this case. That clause in the contract is as follows:

"Sixth: The parties expressly stipulate and agree, however, that there is excluded from the above sale and purchase the account of George N. Titus with said partnership, including any and all claims and demands of George N. Titus against the partnership and any claims or demands of the partnership against the said George N. Titus; that an account between these parties shall be settled in the pending chancery suit of George N. Titus against the parties of the second part in the Circuit Court of Augusta county and upon such settlement the party of the first part will pay any sum found owing by him to the partnership and on the other hand the parties of the second part will pay any sum found owing by the partnership to the said Titus."

By agreement of counsel, R. E. R. Nelson was selected as the commissioner to execute the decree of reference, and after the taking of voluminous evidence, he filed his report on November 30, 1937.

The commissioner found against the contentions of Titus, that he was entitled to compensation for nursery stock planted on the "Ellis Land," that he was entitled to salary at the rate of $150 per month for a period of twenty-three months, and that under the terms of the contract of sale, he was in no wise indebted to the partnership. The commissioner also found that due to certain withdrawals made by Titus and other proper charges against him, he was indebted to the partnership, as of January 1, 1935, in the principal sum of $7,956.44, less the principal and interest of a note of the partnership held by him amounting to $3,024.46. In brief, after construing clause six of the contract to mean that the withdrawals of Titus were debts due by him to the partnership, and charging Titus with certain articles purchased by him from the partnership, the commissioner found that the liability of Titus to the partnership was the sum of $5,819.74 as of the date of the report.

To the report, Titus filed exceptions. Exception eight is based upon the alleged erroneous finding of the commissioner, predicated upon his construction of clause six of the agreement, that Titus was indebted to the partnership in the sum stated. In a written opinion this exception was sustained, the chancellor saying:

"The Commissioner treats these withdrawals of Mr. Titus as debts due to the partnership. In this the Court thinks the Commissioner was in error. Withdrawals made by the partner from the assets of the partnership are not debts against him in favor of the partnership. They are mere items in the account ascertaining the interest of the partner in the assets of the partnership and they are to be deducted from the net interest of the partner in the partnership. They are charged up against the net earnings of the partner if the net earnings are sufficient to pay the withdrawals. If the net earnings are not sufficient to pay the withdrawals

they are charged up against the interest of the partner in the capital of the partnership, and then, if the capital is not sufficient, they become a debt of the partner * * * If the withdrawals were treated as a debt, then it would inure to the benefit of all of the partners; whereas, it should simply cut down the interest of the partner who made the withdrawal.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"These withdrawals by G. N. Titus are not debts due by him to the partnership, they are simply items in the settlement of his account with the partnership to show what his interest in the partnership amounts to and they should not be so charged."

To sustain this conclusion the chancellor cites *Summerson* v. *Donovan,* 110 Va. 657, 66 S. E. 822, 19 Ann. Cas. 253. In that case Judge Whittle said:

"In Story on Partnership (Bennett's Ed.), sec. 304-a, the learned author observes: 'If a partner has made advances to the firm, and others have received advances from it, these do not constitute debts, strictly speaking, until the concern is wound up, but are only items in the account between partners.'

"These principles are elementary and are abundantly sustained by authority. 2 Clement and Bates, Law of Partnership, sec. 849; *Ross* v. *Cornell,* 45 Cal. 133; *Wilson* v. *Soper,* 13 B. Mon. (Ky.) 411, 56 Am. Dec. 573.

"In *Tindal* v. *Bright,* Minor (Ala.) 103, it was held that an action at law was not sustainable on a single bill executed by one of the partners to the firm.

"In *Richardson* v. *Bank of England,* 4 Mylne & Craig, 165, 172, Lord Cottenham remarked: 'Nothing is more settled than * * * what may have been advanced by one partner or received by another can only constitute items in the account. There may be losses, the particular partner's share of which may be more than sufficient to exhaust what he had advanced, or profits more than equal what the other has received; and until the amount of such profit and loss

be ascertained by the winding up of the partnership affairs, neither party has any remedy against, or liability to, the other for payment from one to the other of what may have been advanced or received."

 It must be conceded that the rule adopted by the chancellor and sustained by the decision cited, is the general rule governing the settlement of partnership affairs. However, in the instant case the general rule is not applicable, for the reason that the parties, by clause six of the contract, have rendered it inapplicable. If, by reason of the sale, Titus was absolved of all liability to the partnership, there was no reason to incorporate clause six in the contract. Then again, if Titus was relieved of his burden, why the direction in the decree to the commissioner to "take, state, settle, and report to the court an account showing the account of the said G. N. Titus with the former partnership"? That the decree was drawn by counsel is apparent. That the contract was prepared by counsel is plainly inferable. Hence, we conclude that the parties were dealing at arm's length.

Upon sustaining the eighth exception, the chancellor recommitted the report.

The commissioner filed a second report which did not meet the approval of the chancellor, and thereupon the chancellor recast the account and entered a judgment against Quillen and Darnell in the sum of $2,868.22 as of January 1, 1935. The method of arriving at this conclusion is thus stated:

"And the court thereupon recast the said account in conformity with its said opinion and decree, that is to say: There is deducted from $7,956.44, the balance of account found against Titus in Commissioner Nelson's first report, the sum of $7,650, the aggregate of Titus' said withdrawals, and also the sum of $150, with which additional sum the decree aforesaid directed Titus to be credited, the result being a debit against Titus of $156.44; and said debit balance of $156.44 is deducted from the sum of $3,024.66, which the Master Commissioner in said first report found was the

amount on January 1, 1935, owing upon the note held by Titus; the remainder, $2,868.22, as of January 1, 1935, constitutes the amount to be paid to G. N. Titus by E. M. Quillen and J. M. Darnell under their agreement."

This action of the chancellor is assigned as error.

■ As heretofore indicated, we are of opinion that the assignment is well founded. There is no ambiguity in clause six of the agreement and our duty is to construe it as it is written.

In *Kiser* v. *Amalgamated Clothing Workers of America,* 169 Va. 574, 194 S. E. 727, 730, 114 A. L. R. 1291, this pertinent statement is made by Mr. Justice Browning:

"Contracts and agreements which constitute the foundation of business relations among persons and interests are made to be kept, not broken. If this were not so, faith in men's transactions in the commercial and trading world, indeed in all the material activities of life, would be so shaken as to imperil the structure of business existence. Regard for the faithful performance of contracts has the sanction of the law. Those who violate their contracts to the hurt and detriment of others with whom they contract must answer in some appropriate way for the injury done."

If the conclusion of the chancellor, in view of clause six, is correct, then how can it be said that Quillen and Darnell are indebted to Titus? All the parties to the contract must be placed on the same footing.

Our conclusion on this branch of the case is that after deducting the amount due by them to Titus, Quillen and Darnell are entitled to a judgment against Titus in the sum of $5,639.28, as of January 1, 1938.

We now come to the second branch of the case, to-wit, a consideration of Titus' cross-assignments of error, which are as follows: The court erred in not allowing Titus the sum of $3,450 claimed as salary for the period of twenty-three months, beginning February, 1933, and ending January, 1935.

Code, section 4359 (18) provides: "All partners have equal rights in the management and conduct of the partner-

ship business." There is evidence to the effect that Titus returned to work in February, 1933; that at the instance of Quillen, he was denied any payment as salary for a period of twenty-three months; that during this period Quillen and Darnell received a salary of $150 per month.

One of the well settled rules relative to the conduct of partnership affairs is that all action of the partnership is based upon the agreement of the partners. In other words, each partner has a voice in the conduct of the business. In the instant case, however, it appears that Quillen was the partner who spoke with authority. It was the legal duty of Quillen and Darnell to come to a definite agreement with Titus with reference to the question of salary. If an amicable agreement could not be reached, each partner had the right to ask for a dissolution of the partnership. The mere fact that in the opinion of Quillen, Titus was disabled, did not change his status as a partner. Unless there was an agreement to the contrary, his rights were fixed.

In Mechem Elements of Partnership (2d Ed.) p. 161, this is said:

"Nor does the fact that one partner is disabled by sickness from rendering any service, give another partner, who performs it all, a claim for compensation; for such sickness is one of the risks incident to the relation."

After refusing to pay Titus' salary, Quillen and Darnell increased their own salaries to two hundred dollars a month.

The assignment of error is sustained.

The next cross-assignment of error calls in question the action of the court in refusing to allow Titus compensation for a certain block of trees set out on the "Ellis Land." The action of the chancellor is based upon the theory that he had no evidence before him whereby the value of the trees could be ascertained. There is no doubt that the partnership received the benefit of Titus' labor and expenditure on the "Ellis Land." An exhibit filed shows that Titus expended the sum of $852.29 in propagating the trees in question. In *Campbell* v. *Northwest Eckington Imp. Co.*, 229 U. S. 561, 33 S. Ct. 796, 57 L. Ed. 1330, it was held that

a partner in a scheme to develop and market undeveloped property, should, on an accounting, be credited with whatever sum he has properly expended for the common enterprise.

In our opinion he is entitled to have this sum credited on the judgment entered against him.

While the case is not without difficulties, we are firm in our view that the conclusions we have reached are based upon the doctrine of substantial justice as laid down by Mr. Justice Spratley in *Watson* v. *Coles,* 170 Va. 141, 195 S. E. 506, 508:

"The object and desire of this court is to arrive at substantial justice as closely as is humanly possible."

We are therefore of opinion that the account should be recast as follows: Quillen and Darnell are entitled to recover the sum of $5,639.28, subject to a credit of $4,302.29, which leaves a balance due Quillen and Darnell of $1,336.99.

The decree of the lower court will be reversed and annulled, and this court will enter a decree in conformity with the views herein expressed.

*Reversed.*