**Alexandria**

WILLIAM C. SMITH

v.

CLARE A. SMITH

No. 0678-85

Decided December 16, 1986

COUNSEL

Betty A. Thompson, for appellant.

Mark P. Friedlander, Jr. (Friedlander, Friedlander & Brooks, P.C., on brief), for appellee.

OPINION

**BENTON, J.** — William C. Smith appeals from an order requiring him to pay appellee, Clare A. Smith, the sum of $292,163.79 plus accrued interest in alimony arrearages. Mr. Smith contends that the trial court erroneously construed a Property Settlement Agreement and certain assignment instruments entered into by the parties and incorporated into the final decree of divorce. For the reasons set forth in this opinion, we affirm the decision of the trial court.

William and Clare Smith's final decree of divorce incorporated a Property Settlement Agreement (the "Agreement") executed by the parties on July 1, 1980.[1] On the same day that the Agreement

---

[1] The Agreement provided, in pertinent part:

4. *ALIMONY*. Husband shall make a monthly payment to Wife for her support and maintenance of Eight Hundred Dollars ($800.00) beginning April 1, 1980 and continuing for a period to end on the earliest to occur of . . . (c) at such time as the property described in paragraph 6(a) hereof first yields to Wife a monthly payment (or its equivalent, if payments are not made on a monthly basis) of Eight Hundred Dollars ($800.00) per month.

\* \* \*

6. *INTERESTS IN CERTAIN LIMITED PARTNERSHIPS.*

was entered into, Mr. Smith executed six separate documents, styled Assignment of Beneficial Interest and Declaration of Trust (the "Assignments"), pursuant to paragraph 6(a) of the Agreement. Although each Assignment pertained to a different partnership interest, they all contained the following operative language:

> NOW, THEREFORE, The Declarant [Mr. Smith] does hereby declare that he shall hold . . . [X] percent of the Declarant's Partnership Interest (hereinafter referred to as the "Beneficial Partnership Interest") as Trustee, for the sole beneficial use and enjoyment of Beneficiary [Ms. Smith], effective for all purposes and in all respects as of the date hereof. *Beneficiary shall be entitled to receive all cash distributions earned or accrued in respect to the Beneficial Partnership Interest, at such time as such cash distributions are actually paid to Declarant by the . . . Partnership . . . (and in the event of a sale Declarant shall remit to Beneficiary [X] percent of the net cash proceeds realized by Declarant on such sale).*

(emphasis added). The interest held in trust for Ms. Smith was a specified percentage, between 25% and 50%, of Mr. Smith's ownership interest in each of the six partnerships. His ownership interests in the six partnerships ranged from 1% to 6%.

Immediately following the execution of the Agreement and the Assignments, Mr. Smith commenced monthly payments to Ms. Smith in the amount of $800 as required by the Agreement. After approximately eleven months, Ms. Smith began to receive pursuant to the Assignments increased and varying monthly payments. In July, 1983, Mr. Smith ceased payments to Ms. Smith entirely. Subsequent negotiations resulted in amendments to the Assignments, which are not germane to this appeal. Mr. Smith thereafter unilaterally determined that certain types of cash distributions

---

(a) The Husband is a limited partner in the following five (5) limited partnerships, [here there is a description of the five partnerships] and is a partner in . . . a general partnership. Husband hereby agrees to create a fund for the future support of Wife by holding a portion of his partnership interests in such partnerships in trust for the benefit of Wife, all in accordance with six (6) certain Assignments of Beneficial Interest and Declaration of Trust agreements executed contemporaneously herewith. Any and all funds received by the Wife as a result of this arrangement shall be credited against the payments required by paragraph 4 hereof.

were not subject to the Assignments and began withholding payments to Ms. Smith even though he previously paid a percentage of similar cash distributions to her.

Ms. Smith obtained a Rule to Show Cause, alleging that Mr. Smith violated the Agreement and was in contempt of court. In response, Mr. Smith filed an answer in which he asserted that the Assignments operated to transfer only sums "earned" or "accrued" and not cash obtained from the refinancing of the properties held by the partnerships. He also filed a cross-petition claiming that his monthly obligation under the Agreement was limited to a maximum of $800 and that, by mistake, he paid $90,269.29 in excess of that which he was required to pay under the Agreement.

After taking evidence, the trial court determined that the parties' intent, as manifested in the Agreement of July, 1980, was that Ms. Smith was to receive a portion of all cash disbursements made to Mr. Smith from the partnerships and that the cash distributed to Mr. Smith as a result of the refinancing of properties was to be included in determining the payments owed to Ms. Smith. Judgment was awarded to Ms. Smith in the amount of $292,163.79 plus interest.

In Virginia property settlement agreements are contracts and subject to the same rules of formation, validity and interpretation as other contracts. *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of the disputed provisions. *See Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984); *Hutchison v. King*, 206 Va. 619, 625, 145 S.E.2d 216, 221 (1965); *Tiffany v. Tiffany*, 1 Va. App. at 15, 332 S.E.2d at 799.

In construing the instruments our threshold inquiry is whether their terms are ambiguous. "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Renner Plumbing v. Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983); *see also Amos v. Coffey*, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984); *Berry v. Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983). The fact that the parties attribute to the same terms variant

meanings does not necessarily imply the existence of ambiguity where there otherwise is none. *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

■ When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning. *See, e.g., Amos v. Coffey*, 228 Va. at 92-93, 320 S.E.2d at 337. Where there is no ambiguity in the terms of a contract, we must construe it as written, *see, e.g., Quillen v. Titus*, 172 Va. 523, 530, 2 S.E.2d 284, 287 (1939); *Potts v. Mathieson Alkali Works*, 165 Va. 196, 224, 181 S.E. 521, 532 (1935), and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself. *See, e.g., Berry v. Klinger*, 225 Va. at 208, 300 S.E.2d at 796; *W.D. Nelson & Co. v. Taylor Heights Development Corp.*, 207 Va. 386, 389, 150 S.E.2d 142, 145 (1966); *Walker & Laberge Co. v. First National Bank*, 206 Va. 683, 690, 146 S.E.2d 239, 244 (1966); *Globe Iron Construction Co. v. First Nat'l Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965). Mr. Smith asserts that "the language employed in the written agreement was plain and unambiguous." We are also of the opinion that the instruments involved are unambiguous in their terms. Both the Agreement and the Assignment documents contain language easily understood by reference to a dictionary or common usage. The terms of the Agreement and the Assignment documents do not possess multiple meanings nor do they refer to varied things simultaneously.

We begin by examining the terms of the Assignment documents. The sentence we are primarily concerned with reads as follows:

> Beneficiary shall be entitled to receive all *cash distributions earned or accrued* in respect to the Beneficial Partnership Interest, at such time as such cash distributions are actually paid to Declarant by the Partnership. (emphasis added).

Mr. Smith asserts that cash distributions earned or accrued "must be distinguished from distributions made from the capital account." He argues that this distinction effectively precludes Ms. Smith from receiving a portion of cash distributions paid to him from the refinancing of the various properties held by the partnerships. We disagree.

Although the term "distribution" is modified by the word "cash," no other restriction, except the words "earned or accrued," is applied to the source of the cash which Ms. Smith is entitled to receive. The funds at issue here are cash distributions to the various partners generated by a refinancing of the accrued equity in the partnership assets. The Assignments make no distinction between cash distributions resulting from a refinancing of partnership properties and those which are otherwise "earned or accrued."

Mr. Smith argues that the words "earned" and "accrued," which immediately follow the term "cash distribution," indicate that the distributions in which Ms. Smith is entitled to share are only those which would be tantamount to "profits;" however, he points to no persuasive authority to support his assertion. We do not discern from the words of the Assignment instruments that the distributions embrace only the funds remaining after the payment of expenses and other deductions taken in computing "profits."

Mr. Smith further contends that "cash distributions earned or accrued" should not be construed to encompass distributions of capital generally. The argument is advanced that "[i]f a partner is not entitled to count the distribution of 'capital' as income . . . the assignee of a partner. . . is clearly not so entitled." The fallacy in this argument is apparent: Mr. Smith's rights to the funds in question are not in issue here. He has already received the cash disbursements as a result of his relationship with the partnerships; thus, no issue is presented concerning his right to the funds vis-a-vis his other partners. It is only after the disbursements have been made to him that Ms. Smith is entitled to enforce her rights to a portion of them. Once the funds are distributed, her interest attaches by operation of the Assignment instruments without regard to the manner in which Mr. Smith is required to account to the taxing authorities.

Moreover, in the absence of limiting language in the Assignments or in the various partnership agreements, none of which were offered in evidence, there is no basis upon which to exclude the cash distributions from the refinancing proceeds. Whether the refinancing proceeds are considered earnings, *see* M. Appel & M. Leon, *Joint Ventures In Real Estate* 41 (3d ed. 1972), or a return of capital is irrelevant to Ms. Smith's claim. The funds paid to

Mr. Smith represented his share of cash available for distribution to the partners generally, and are subject, therefore, to the assignment in favor of Ms. Smith.

We also believe it is significant that the Assignments entitle Ms. Smith to receive a percentage of the "net cash proceeds" realized by Mr. Smith in the event of the sale of his partnership interest. Mr. Smith cites no authority or definition which would limit the meaning of "net cash proceeds" to cash that represents only non-capital funds.

There is nothing in *Legum Furniture v. Levine*, 217 Va. 782, 232 S.E.2d 782 (1977), cited to us by Mr. Smith, which supports his contention that "cash distributions earned or accrued" must be limited to "profits." In *Legum*, the court was concerned primarily with the rights of joint venturers vis-a-vis each other upon dissolution of the venture. The rights of the assignee were derivative of those of the venturers themselves, and the disposition of that appeal hinged on the rights of joint venturers as between themselves. That is not the case here because there is no dispute in this case as to the amount of money owed by the partnerships to Mr. Smith. Ms. Smith's rights in this case are not contingent upon Mr. Smith's rights vis-a-vis his partners. Instead, her rights to partnership distributions are created and delineated by the Assignment instrument. It is, therefore, of no significance in this case that the *Legum* court held that "there is no profit to divide until the capital cost of the property acquired by the venture has been recovered and paid." *Id.* at 788, 232 S.E.2d at 786. Here, Mr. Smith's rights to "profits" are not germane to the resolution of this appeal. We are concerned only with the "cash distributions" which he has received without dispute.

Furthermore, we note that the assignment instruments were drafted by Mr. Smith's representative. If it had been intended that Mr. Smith would share with Ms. Smith only those distributions which were "profits," it easily could have been specified by using the word "profits" or other precise limitations in lieu of the words "cash distributions earned or accrued."

No matter how inartfully the Assignments may have been originally drawn, we cannot now make a new contract for the parties. We can only construe the terms as written. *See Berry v. Klinger*, 225 Va. at 208, 300 S.E.2d at 796. Since the term "cash distribu-

tion earned or accrued" was used in drafting the Assignments, we are constrained to hold that it was intended that Ms. Smith receive her designated portion of all cash distributions, earned or accrued, paid to Mr. Smith by the partnerships. Once the funds were distributed to Mr. Smith, Ms. Smith's rights to share in them pursuant to the Assignment instruments attached under paragraph 6(a) of the Agreement and the operative part of the Assignments.

Having determined the scope of the Assignment documents, we must now integrate those provisions with the provisions of the Property Settlement Agreement. The two instruments, being so intricately related and resulting from the same transaction, must be read together in determining the meaning expressed by each. *See J.M. Turner & Co. v. Delaney*, 211 Va. 168, 171-72, 176 S.E.2d 422, 425 (1970).

Paragraph four of the Agreement provides that Mr. Smith is to pay $800 per month "continuing for a period to end on the earliest to occur of . . . (c) . . . such time as the property described in paragraph 6(a) . . . first yields to Wife a monthly payment . . . of Eight Hundred Dollars." Paragraph 6(a), in turn, provides that "[a]ny and all funds received by the Wife as a result of [the Assignments] shall be credited against the payments required by paragraph 4 hereof." We do not discern from these provisions an implied limit of $800 on Ms. Smith's monthly receipts. When read as an integrated whole, the plain meaning of these instruments grants to Ms. Smith a right to receive from Mr. Smith a *minimum* of $800 per month until the Assignments in the aggregate first yield to Ms. Smith a monthly payment of $800. The manifest intent of the Agreement was that, until the arrangements established by the Assignment instruments first yielded $800, Mr. Smith was obligated to make payments of $800 each month. Nowhere in either paragraphs 4 or 6(a) is there a stipulation that payments to Ms. Smith shall not exceed the $800 initial payment guaranteed her by paragraph 4. We read these provisions as stipulating only the source of the payment and not a limitation thereon; thus, Ms. Smith was entitled to receive any and all further funds accrued to her as a result of the Assignment instruments. If it had been the intention of the parties to limit the payments to $800 per month, it could have been effectuated by drafting paragraph 6(a) to include an appropriate limiting clause.

Mr. Smith contends that this construction is in conflict with statutory and common-law principles of partnership theory. We disagree because principles of partnership are not implicated in the facts of this case. Mr. Smith received the distributions from the partnerships as a result of his relationships with the partnerships. Those relationships are indeed governed by principles of partnership law. Ms. Smith, however, was entitled to receive her share of those funds by operation of the Agreement which she negotiated with Mr. Smith and which was prepared, together with the Assignment, by Mr. Smith's representative. Once a cash distribution, earned or accrued, is paid to Mr. Smith, it is irrelevant whether it is a distribution of "profits" or "capital." It is subject to the Assignments and is payable to Ms. Smith in proportion to her interests.

Finally, we note that Mr. Smith in fact made payments in conformity with the construction set out above. Generally, the interpretation placed upon an agreement by the parties themselves is entitled to the greatest weight. *See, e.g., Treakle v. Pocahontas Steamship Co.,* 273 F.Supp. 608, 611 (E.D. Va. 1967), *aff'd,* 406 F.2d 412 (4th Cir. 1969). Although we do not interpret Mr. Smith's conduct as dispositive of the question of interpretation, we do note that the payments were made in accordance with what we perceive to be the plain meaning of the agreement between the parties. Thus, we cannot say that these payments were "[m]oney paid under a mistake" entitling Mr. Smith to recovery of the funds under equitable principles.

Since the proper construction of the disputed agreements is in accord with that rendered in the trial court, we affirm the decision below.

*Affirmed.*

Keenan, J., and Moon, J., concurred.