## CIRCUIT COURT OF WASHINGTON COUNTY

Donald Gene Mullins

    v.

Barbara Fay Mullins

February 10, 1988

Case No. (Chancery) 8283

By JUDGE CHARLES H. SMITH, JR.

I have reviewed the file on this matter along with all exhibits and have considered same in addition to arguments made on your motions on January 22, 1988. In consideration of all of which the court finds as follows.

The parties hereto were formerly husband and wife and were divorced by decree entered in this court on the 24th of March, 1981. The parties had entered into a "Separation and Property Settlement Agreement" prior to their divorce, and the same was ratified and confirmed by the divorce decree. It is the interpretation of some of the terms of this agreement that has led to the present controversy.

In addition to the usual terms, the separation agreement provided on page 5 as follows:

> *Real Estate*: That the parties are joint owners of a certain parcel of real estate in Abingdon, Virginia. The parties hereto agree that the real estate shall be sold for sixty-five thousand dollars ($65,000.00) and shall not be sold for a lesser amount unless said lesser amount is

agreed to by both parties, upon the above real estate being sold, all debts, liens, and encumbrances attached thereto shall be fully satisfied, and the balance of all proceeds thereafter shall be escrowed and applied to the purchase or erection of a residence for wife and children, but said purchase price or construction cost shall not exceed the amount escrowed under any circumstances. The real estate mentioned herein is to be titled in the wife's name and the children's names with a reverter of the wife's interest to the children upon wife's death or remarriage. The husband further agrees to maintain property insurance and to pay all real estate taxes which may be due on the property or any property the wife owns and in which there is a reverter interest to the children conditioned upon wife's death or remarriage.

The real estate, unfortunately, was on the market for some time and did not sell for $65,000.00 as hoped for but did sell for $52,000.00 in April of 1987. After payment of costs of sale and certain outstanding obligations of the parties, the balance of the equity, $15,545.03, was paid to Mrs. Mullins. An additional $10,000.00 of the equity, part of the controversy herein, has been placed in escrow pending settlement of this dispute.

There was, at the time the agreement was entered into, an outstanding FHA mortgage on the home with a balance in excess of $10,000.00. Sometime in early 1987, Mr. Mullins was informed by the FHA that, due to his income, he no loner qualified for the FHA loan. The balance due at that time was $10,775.74. Mr. Mullins proceeded to borrow $10,000.00 from Highlands Union Bank and $1,000.00 from Dominion Bank and paid off this mortgage. Highlands Union Bank apparently held a C/D of Mr. Mullins as collateral to secure this loan.

The parties are also in dispute over the provision for the payment of real estate taxes on the property. The above paragraph of the agreement clearly requires Mr. Mullins to pay the real estate taxes. The taxes for the years 1985 and 1986 in the amount of $802.37 were deducted from the proceeds of the sale of the house and paid as a part

of the closing costs. Mrs. Mullins claims that Mr. Mullins owes her this amount. Mr. Mullins claims that he should be entitled to an offset for this against the payoff he paid to FHA in excess of $10,000.00.

The other matter in controversy concerns insurance. The separation agreement provides as follows:

> *Insurance*: The husband hereby agrees to provide Medical and Dental Health for the children and wife. Husband further agrees to maintain the medical Health Insurance Policy on the children after the divorce and until such child reaches the age of majority. The husband further agrees to maintain medical insurance on the wife until wife remarries.

This paragraph clearly requires Mr. Mullins to "maintain medical insurance on the wife until wife remarries." Mrs. Mullins has not remarried. By admission, Mr. Mullins did cancel the medical insurance on Mrs. Mullins on December 1, 1982, upon learning that she was pregnant with an illegitimate child. As a result, Mrs. Mullins incurred uninsured medical costs of approximately $10,000.00 which she claims Mr. Mullins should be responsible for. Mr. Mullins disputes this, claiming that he did not agree to maintain maternity insurance on Mrs. Mullins. Mr. Mullins did reinstate her insurance on October 1, 1984.

These matters are before the court on Motions for Summary Judgment filed by both parties. The court is of the opinion that the pleadings, exhibits, stipulations, and arguments of counsel provide a sufficient basis for the court to resolve the issues presented.

### *Who is entitled to the $10,000.00 held in escrow?*

The answer to this question revolves upon whether the $10,000.00 borrowed from Highlands Union Bank to pay off the FHA mortgage, though admittedly not made a lien upon the real estate, maintained its identity as a "debt attached thereto" at the time the house was sold on April 1, 1987. The court must look to the intentions of the parties in contracting the way they did.

In Virginia property settlement agreements are contracts and subject to the same rules of formation, validity, and interpretation as other contracts. *Tiffany v. Tiffany*, 1 Va. App. 11 (1985). In the case of *Smith v. Smith*, 3 Va. App. 510 (1986), the Court of Appeals stated:

> In construing the instruments, our threshold inquiry is whether their terms are ambiguous. An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time. (citation omitted) The fact that the parties attribute to the same terms variant meanings does not necessarily imply the existence of ambiguity where there otherwise is none . . . .
>
> When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning. (citation omitted) . . . and we are not at liberty to search for the meaning of the provision beyond the pertinent instrument itself.

In construing contracts, courts are bound to give them the interpretation that is most obviously just and most in accordance with the presumed intention of the parties. The general rule is that the court ought to adopt that which is most equitable and which will not give an unconscionable advantage to one party over another. *See* Michie's Jurisprudence, vol. 4B, *Contracts*, sec. 43.

> The cardinal rule in the construction of contracts is that the intention of the parties governs . . . .
>
> It not infrequently happens that courts have to settle the construction of a contract in regard to questions which never occurred to the parties to it. Courts shall best carry out their intentions by construing their language neither strictly nor liberally, but fairly . . . . (*Ibid.*, Sec. 45)

The courts may interpret a contract to add a term by implication if necessary to effectuate the intentions of the parties. If not inconsistent with the written terms of a contract, and, if plainly within its purpose, as indicated by the situation of the parties and all the circumstances, it may be supplied or treated as included in it.

The primary purpose of the parties in contracting as they did with respect to the real estate was to see that their children had a home. At the time, they contemplated sale of the home for an optimistic price and application of the proceeds to elimination of "all debts, liens, and encumbrances attached thereto." The parties obviously did not contemplate, on November 7, 1980, that it would take almost seven years to sell the house nor that it would sell for such a reduced amount. The parties did not contemplate, on November 7, 1980, that payoff of the FHA mortgage would be required prior to maturity.

While there are express provisions in the agreement concerning child support, spousal support, taxes, insurance, etc., there is no provision concerning who was to make the monthly mortgage payment to FHA pending sale of the home. Nevertheless, Mr. Mullins apparently continued to make these payments in addition to the child and spousal support. There is no evidence concerning the amount of the monthly payment, but it obviously added up to a substantial sum over the years.

Mr. Mullins did not voluntarily anticipate payment of the FHA loan. (We all are aware it is difficult to obtain more favorable terms.) He obviously felt solely responsible for the loan, and, thus, when it was called early, he did the only thing a prudent and responsible person -- one concerned about preserving his credit as well as one concerned about providing a home for his children -- could do under the circumstances. He borrowed money to pay off the loan. He, in effect, substituted one loan for another. Can he be faulted, then, for not making this loan a "lien or encumbrance" attached to the real estate? I think not. To his credit, he was able to secure the loan using his signature with a C/D as collateral. I do not think anyone believes that any conventional lending institution would have loaned him the money on the security of his interest in this real estate.

Had he ignored the FHA payoff demand, most surely there would have been a foreclosure and a sale at a reduced price resulting in less equity to Mrs. Mullins or even a deficiency judgment against both.

I think it clear, therefore, that the payoff loan, though not technically a "lien or encumbrance" on the real estate at the time of the sale, did maintain its identity as a "debt attached thereto" under the circumstances of this case. Further, Mrs. Mullins has reaped the benefit of the gratuitous mortgage payments by Mr. Mullins over the years which certainly provided her with increased equity in the home, and it would be unfair, unjust, and inequitable to grant Mrs. Mullins these escrowed funds and cause Mr. Mullins, in effect, to suffer treble damages.

### Real Estate Taxes

The real estate taxes on the property for the years 1985 and 1986 in the amount of $802.37 were deducted as part of the closing costs. Mr. Mullins was clearly responsible for these taxes under the express terms of the agreement. He claims, however, he should be able to offset the payment of this against the $10,775.74 payoff he made. It is not clear why, but the full amount of the payoff was not escrowed. In any event, if Mr. Mullins is entitled to credit for any part of the payoff he made, as discussed above, he is entitled to credit for all. Mrs. Mullins, therefore, owes Mr. Mullins $774.75, the amount of the payoff in excess of the escrow funds; Mr. Mullins, however, owes Mrs. Mullins $802.37, the taxes deducted from her equity. Mr. Mullins should pay Mrs. Mullins the difference.

### Medical Insurance

Mr. Mullins was required to carry medical insurance on Mrs. Mullins by the clear and express terms of the agreement. Mr. Mullins cancelled this insurance at a most inopportune time, one week before Mrs. Mullins gave birth to a child. Mrs. Mullins incurred uninsured medical expenses as a result thereof. Mr. Mullins claims he was justified in cancelling the policy since he was not required to carry maternity insurance. This argument is not well taken.

Maternity benefits are a standard part of most health insurance policies and is provided at no additional premium. If this were not so, it could have been excepted from the terms of the agreement. If Mr. Mullins' argument carries, it might well have been offered as to any malady contracted by Mrs. Mullins not specifically specified in the agreement. To his credit, Mr. Mullins did reinstate the insurance in October of 1984, but he owes Mrs. Mullins for the uninsured medical bills she claims.