COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Annunziata and Overton
Argued at Alexandria, Virginia


MIROSLAVA WHITT GORDON

v.          Record No. 0847-95-4      MEMORANDUM OPINION[*] BY
                                      JUDGE ROSEMARIE ANNUNZIATA
MICHAEL WHITT                              JANUARY 23, 1996


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     J. Howe Brown, Judge

        Jerold J. Negin (Raymond B. Benzinger, on
        brief), for appellant.

        Craig E. Baumann, for appellee.



     On July 18, 1990, Miroslava Whitt Gordon ("wife") and

Michael Whitt ("husband") entered a separation and property

settlement agreement ("PSA") that was incorporated by reference

into a Final Decree of Divorce entered November 6, 1990.  Each of

the parties were the subject of Rules to Show Cause based on

certain alleged violations of the PSA.  The wife appeals the

trial court's order entered after a hearing addressing the issues

raised by the Rules.

     On appeal, wife claims the court erred in the following: (1)

finding that wife drafted the PSA; (2) concluding that wife is

liable under the PSA for the principal balance of the debt on an

equity line of credit; (3) excluding from evidence husband's

letters to wife; (4) precluding wife's counsel from conducting

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

redirect examination of wife; and (5) failing to award wife a three-day share of husband's military pension. We find the court erred in its construction of the PSA provision relating to the liability for the line of credit indebtedness and, therefore, reverse and enter judgment for wife on this issue. We also reverse the trial court's decision denying wife's claim to a per diem, pro rata share of husband's pension. The remaining issues need not be reached as they have no bearing on the outcome of this appeal.

Property settlement agreements are subject to the same rules of interpretation as other contracts. Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). Construing the terms of such agreements is an issue of law, entitled to independent review. See Id. The Court first inquires whether a term is unambiguous; if so, the term is given its ordinary meaning. Id. at 513-14; Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). A term is not ambiguous merely because the parties disagree as to its meaning. Id.; Wilson v. Hollyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

The parties' respective positions regarding the line of credit liability rest on two paragraphs in the PSA which state as follows:

12. The "Husband" transfers and assigns unto the "Wife" his rights, title and claim to the Home and equity located at, 12143 Derriford Court, Woodbridge, VA 22192, currently titled/deed in both names and they shall execute such documents as may be necessary or proper for the issuance of new ownership documents for said property in the name of the "Wife". The "Husband" gives up his claim to the share of equity in 12143 Derriford Court.

The "Wife" will be responsible for all taxes, (capital gains), fees and other expenses related to the ownership of this property. The "Wife" agrees to be liable and pay the current indebtedness, if any, on this property and agrees to indemnify and hold the "Husband" harmless from any and all liability thereon.

13. The "Husband" transfers and assigns unto the "Wife" his claim to use the home equity line of credit on the House located at, 12143 Derriford Court, Woodbridge, VA 22192. The "Husband" agrees to be liable and pay the current indebtedness, if any, on this equity line of credit and agrees to indemnify and hold the "Wife" harmless from any and all liability thereon. Neither party will be allowed to use the equity line as a line of credit in the future.

Wife alleges paragraph 13 of the PSA when read together with paragraph 12 requires husband to pay not only the current interest on the equity line, but also the principal debt which became due upon the sale of the marital home. Husband contends wife is liable for the principal since paragraph 12 requires wife to pay the "current indebtedness" on the marital residence and to hold husband harmless as to any such indebtedness. Husband reasons that, since the line of equity was secured by the house, the term "current indebtedness" in paragraph 13 must be construed as limiting his liability to the interest due on the equity line of credit and not the principal, which became due when and if the house was sold.

Although the parties in this case disputed what was intended by the use of the term "current indebtedness" in paragraph 13, we find the provision to be unambiguous. As such, we confine ourselves to the four corners of the instrument in construing the PSA. See Blunt v. Lentz, 241 Va. 547, 551, 404 S.E.2d 62, 64

(1991).  In so doing, it is clear that the parties intended their use of the term "current indebtedness" in paragraph 13 to encompass both the principal and interest owed on the equity line of credit.

The parties used the term "current indebtedness" in a formulaic manner in each of the eight paragraphs in the PSA which address the division of the marital property and the party responsible for paying the remaining debt on the property to be transferred.  The property and debt so divided included vehicles, a sailboat, a land parcel in Florida, as well as the marital home and the use of the home equity line of credit.  In each instance, it is clear the parties intended the transferee spouse to be liable for the total debt associated with the property that spouse received.  The PSA is manifestly devoid of any language that supports the view that the parties invested or intended to invest the term "current indebtedness" as it related to the liability for the line of credit with a meaning entirely different from the meaning the parties clearly gave the term throughout the document.

We also conclude that the trial court erred in denying wife's claim to a pro rata share of the husband's April 1, 1993 retirement payment representing the three days in March 1993 that preceded her remarriage.  While the payment was not earned on a per diem basis, a division of the payment on that basis is not precluded by the parties' agreement or by either law or equity.

Accordingly, the judgment of the trial court on these two issues is reversed and judgment entered in favor of the wife requiring the husband to pay the principal and interest owed on the equity line of credit, and to pay wife her _pro_ _rata_ share of his April 1, 1993 retirement payment in the amount of $48.16.

_Reversed_.
