COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


PETER P. SCHLENK
                                        MEMORANDUM OPINION[*] BY
v.          Record No.  2757-95-4      JUDGE ROSEMARIE ANNUNZIATA
                                            DECEMBER 10, 1996
AILEEN G. SCHLENK


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     David T. Stitt, Judge

        Judith S. Landry, for appellant.

        No brief or argument for appellee.


        Husband appeals the circuit court's order finding him in
arrears for child support that he failed to pay to wife.  For the
reasons that follow, we affirm the court's order.

                                 I.

        Husband, Peter P. Schlenk, and wife, Aileen G. Schlenk, were
divorced by final decree entered June 6, 1995.  The final decree
"affirmed, ratified and incorporated" the parties' separation,
custody and property settlement agreement (agreement), executed
in July 1994.  Section 8 A of the agreement provided that the
parties "shall share joint legal and physical custody and control
of the . . . children, and . . . that during periods when [wife]
has primary physical custody, reasonable visitation rights shall
vest in [husband]."  Section 8 B of the agreement, addressing
"Visitation," provided that husband would have visitation on one

───────────────
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

day every weekend, on one day during each week, and on certain holiday periods. The "Visitation" section further provided that the children's "available summer vacation time [would] be divided evenly between [the parties] for purposes of custody and visitation." Specifically, the "Visitation" section provided that when husband was on assignment overseas, "the children [would] have visitation with [him] for six weeks during their summer vacation." Husband agreed to pay the transportation costs for the children's "visitation" with him overseas. Wife agreed to cooperate with necessary preparations for the children to travel for overseas "visitation" with husband. Section 8 C provided that husband's "partial custody as provided in [the "Visitation" section] shall be entirely optional with him."

Section 9 of the agreement required husband to pay wife $1,400 per month "for the maintenance and support of the [parties'] children during the period when they are in [wife's] custody." The final decree required husband to pay wife $1,400 per month in child support but did not include the language of the agreement limiting the payment of support to "the period when [the children] are in [wife's] custody." Both the agreement and the final decree further provided that if husband were transferred and his income reduced below $6,000 per month, the amount of child support would be recalculated to an amount no less than $1,300 per month.

Husband failed to pay wife $2,100 for child support during a

six-week period when the children resided with him in England. When husband resumed his payments, he began paying wife only $1,300 per month, claiming that a reduction in his monthly income justified the reduction in support.

The trial court found that the language of the final decree was "unmistakably clear, conspicuous and unequivocal" in directing husband to pay child support every month without interruption. The court, therefore, ordered husband to pay wife the $2,100 he had refused to pay during the six weeks the children resided with him. The court also found that husband had to provide wife with "independently verifiable evidence that his income had been reduced" before husband could reduce his support payments. The court considered the evidence husband proffered unreliable and, in the absence of independently verifiable evidence, ordered husband to continue paying $1,400 per month and to pay wife a $250 arrearage resulting from his reduced payments.

## II.

Husband's contention that the trial court erred in refusing to affirm his reduction in the amount of monthly support and in requiring him to pay wife the $250 arrearage resulting from his reduced payments is without merit. Under the terms of both the agreement and the final decree, husband was entitled to such a reduction upon proof that his monthly income had been reduced below $6,000 per month. At the hearing, husband's counsel produced a facsimile of a document that purportedly established

husband's reduction in income.  The court, however, refused to receive the document into evidence on the ground that it lacked reliability; the document contained no evidence that it had been generated by husband's employer.  The court directed that support payments continue at $1,400 per month until husband produced more reliable evidence.  The record evidences no further attempt by husband to establish the reduction.[1]

Accordingly, we affirm the court's order directing husband to pay the $250 arrearage.

### III.

We agree with husband's contention that the trial court erroneously based its decision with respect to the $2,100 arrearage solely on the terms of the divorce decree.  Virginia law makes clear that where the terms of a property settlement agreement are "affirmed, ratified and incorporated" into a divorce decree, those provisions "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree."  Code § 20-109.1.  It matters not that the specific language contained in the agreement is not reflected in the decree itself.  See Mackie v. Hill, 16 Va. App. 229, 232, 429 S.E.2d 37, 39 (1993).

In the present case, notwithstanding the absence in the final decree of the specific language of the agreement limiting

---

[1]We note, however, that subsequent to the hearing, the parties filed a consent order which reduced child support to $1,300 per month effective as of the date of the hearing.

the payment of support to "the period when [the children] are in [wife's] custody," the matter before the court was governed by that provision as though incorporated into the decree ad haec verba. Thus, the court erred in failing to construe the terms of the agreement.

However, "[w]hen a trial court reaches the correct result for the wrong reason, its judgment will be upheld on appeal." Dziarnowski v. Dziarnowski, 14 Va. App. 758, 762, 418 S.E.2d 724, 726 (1992). Notwithstanding the trial court's failure to consider the terms of the agreement in the present case, we affirm its result.

The parties' agreement is a contract, subject to the same well-established principles of construction governing other contracts. See Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). As husband contends, the terms of the agreement are clear and definite. Thus, construction of the agreement does not permit the admission of parole evidence; rather, we must confine ourselves to the four corners of the instrument. See id. at 514, 351 S.E.2d at 596. Where the face of the instrument discloses the intent to clothe the terms of an agreement with a particular meaning, the parties' intent shall control. See, e.g., Hederick v. Hederick, 3 Va. App. 452, 455-56, 350 S.E.2d 526, 528 (1986). Here, a review of the agreement fails to support husband's construction of its provisions.

Section 8 A of the agreement, entitled "Custody of Children"

established that the parties share "equal joint . . . physical custody" of the children.  The parties further agreed that when wife has "primary physical custody" of the children, husband was entitled to "reasonable visitation rights."  Section 9 of the agreement requires husband to pay wife child support "during the period [when] they are in [wife's] custody."

Husband contends that, because legal custody resides in both parties, we must construe the child support provision as limiting husband's support obligation to periods during which the children are in wife's physical custody and that, by extension, he owed wife no support for the six-week period during which the children resided with him.

We find that the use of the word "custody" in the support provision refers to the period when wife had "primary physical custody" of the children and that, because wife's status as primary physical custodian continued unchanged during the children's visitation with husband, the agreement does not support the conclusion that husband's support obligation was to be modified during those periods when he exercised his rights to "visitation" or "partial custody."

The visitation/partial custodial rights which vested in husband, and in recognition of wife's primary physical custodial status, are set forth in section 8 B of the agreement.  They include one day every weekend, one evening each week, certain specified holiday periods, and a portion of the children's summer

vacation.  The parties specifically characterized, without distinction, both the summer and the weekend/weekday periods during which husband had physical control of the children as "visitation."  In section 8 C, the parties denominated as "partial custody" the periods that section 8 B defined as "visitation" and agreed that those periods would be "entirely optional" with husband.

Although husband argues that his support obligation was suspended during the summer visitation period, he concedes that his support obligation is not curtailed when the children are with him during weekend and weekday periods, which are also characterized as "visitation" or "partial custody."  Husband points to nothing in the agreement which supports construing the terms "visitation" and "partial custody" in these divergent and inconsistent ways, and we can find none.

Further, the parties specifically incorporated a provision governing a reduction of child support, limiting such modification solely to changes in husband's income.  No provision addressed how support would be reduced or recalculated each time husband exercised his right to "visitation/partial custody."  The parties' silence on this issue supports the conclusion that they intended wife to be entitled to child support during those periods when she had primary physical custody and that husband's exercise of his "visitation/partial custodial" rights during the summer did not divest her of primary physical custody and her

right to child support.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>

Duff, J., dissenting.

I concur in the majority's holding that the trial court did not err in rejecting the husband's contention regarding reduction of his child support payments because of an alleged reduction in income. I also concur that the trial court did err in basing its decision with respect to the $2,100 arrearage solely on the divorce decree. I dissent, however, from the majority's conclusion that, despite this error, the trial court reached the correct result. Such a conclusion ignores substantive and pertinent provisions of the Property Settlement Agreement between the parties.

Section 8A of that agreement provides that the parties "shall share equal joint legal and physical custody and control of the . . . children . . . ." Thereafter, provision is made for the husband to have certain visitation rights when the wife has "primary physical custody." However, in Section 8 C the husband's visitation rights are referred to as "partial custody."

At trial, the court inquired of the wife's counsel the meaning of the custodial provisions of the agreement. The wife's position was that the intent of the provisions was that the parties would be sharing custody of the children at all times. Thus, she would not lose custody when the children visited with their father for six weeks during the summer, and the support payments provided for should not be interrupted.

I would hold such a position to be untenable in view of the

support provisions contained in Section 9 of the agreement. Therein, the parties specifically contracted that support payments would be made for the children in the amount of $1,400 per month "during the period when they are in the [w]ife's custody." To adopt the wife's argument renders the limitation on child support payments meaningless and of no import as there would never be a time when she would not have custody.

Reading the agreement as a whole and giving each word thereof its normal meaning, I conclude that the intent of the parties was that child support would not be paid during the six weeks in the summer when the husband had physical and legal joint custody. Accordingly, I dissent from that part of the majority opinion.