# CIRCUIT COURT OF ROCKINGHAM COUNTY

Gerald C. Shifflett

v.

Karen R. Shifflett

January 27, 1999

Case No. (Chancery) 14959

BY JUDGE JOHN J. MCGRATH, JR.

This case has been reinstated on the Court's docket by the defendant for the purposes of obtaining an interpretation and construction of Paragraph 5 of a Property Settlement Agreement dated March 9, 1994, which was "approved, ratified, and confirmed by this Court and incorporated into the Decree of Divorce" which was entered on August 29, 1994. The provisions which is in dispute between the parties is Paragraph 5 of the Property Settlement Agreement, which reads as follows:

(5) Husband agrees to pay Wife Seven Hundred Dollars ($700.00), representing the mortgage payment on the former marital residence, per month for a period of nine (9) years eight (8) months from May 31, 1994, or until the loan is paid in full.

Originally Paragraph (5) had a continuation which read "or until wife sells the marital residence." However, this clause had been deleted by the parties by crossing through that portion of the agreement, and it is stipulated between the

parties that such deletion was made prior to the execution of the agreement and the incorporation of the agreement in the final Decree of Divorce.

## I. *Facts*

When the parties were married in February of 1987, the defendant in this action, Karen R. Shifflett, was possessed of a single family residence which became the couple's marital home. She was the feme sole owner of the property having acquired it from her previous husband in September of 1981. After the marriage of complainant and defendant, they apparently ran up a substantial amount of credit card and other consumer debt.

On January 25, 1989, Mr. and Mrs. Shifflett applied for and obtained from Beneficial Discount Company of Virginia a loan which was secured by a credit line deed of trust, which was executed by both of them and which was in the amount of $43,600.00. This money was used in substantial part to consolidate the marital debt that had previously accrued. At the time the Property Settlement Agreement was executed, the remaining amortization period on the mortgage loan was approximately nine years and eight months, and the monthly payment on the mortgage was approximately $700.00.

After the execution of the Property Settlement Agreement, the husband continued to make the $700.00 per month payments directly to his wife pursuant to the provisions of Paragraph (5). Unbeknownst to the complainant, on or about June 17, 1997, the defendant refinanced the outstanding debt with a new bank. She took out a loan from the First Union National Bank of Virginia and retired the debt owed to the original mortgagee and also obtained additional funds for her personal use. The complainant did not become aware of the defendant's refinancing until June of 1998. Upon learning of the fact that the Beneficial loan had been paid off in June of 1997, the complainant ceased making payments, taking the position that the clear wording of Paragraph (5) of the Property Settlement Agreement provided that his monthly payments would terminate when, *inter alia*, "the loan is paid in full." Complainant takes the position that his obligation to make the $700.00 payment effectively terminated as a matter of contract law on June 17, 1997, that his obligation to make payments terminated on that date, and that he is entitled to a repayment by the defendant of the $9,100.00 that he has "mistakenly" paid her since the original mortgage was paid in full.

The defendant takes the position that Paragraph (5) of the Property Settlement Agreement requires that the $700.00 a month payments be made to her for the full duration of the original mortgage. Her position is that the

underlying "loan" has not been paid off in that it was simply rolled over into the First Union refinancing. Stated in a slightly different way, her position is that technically speaking the "note" has been paid off and released by the original mortgagor, but the underlying loan continues as to the balance that existed as of the date of refinancing, albeit with a different lender.

## II. *Legal Analysis*

The complainant's position is quite simply stated. He maintains, and quite correctly, that it is well established law that a property settlement agreement is a contract and that although the Court in a divorce proceeding sits in chancery, an interpretation of a property settlement agreement is to be performed in precisely the same manner as an interpretation of a contract between two unrelated parties. See, e.g., *Smith v. Smith*, 3 Va. App. 510 (1986); *Tiffany v. Tiffany*, 1 Va. App. 11 (1985). Furthermore, complainant argues that the contract is clear on its face that all obligations to pay the defendant $700.00 per month terminated when "the loan is paid in full" (i.e., June of 1997). The complainant relies, *inter alia*, upon the Supreme Court's recent decision *White v. White*, [257 Va. 139], which was rendered on January 8, 1999, and earlier cases dealing with the enforceability of property settlement agreement.

Although defendant attempted to introduce evidence concerning the fact that Paragraph (5) of the Property Settlement Agreement was meant to be a form of spousal support, that issue is not pressed by her counsel, and both counsel appear to concede, as they must, that Paragraph (7) of the Property Settlement Agreement is dispositive on the issue of spousal support in that it unequivocally states "both parties hereto waive their right to receive spousal support, both temporary and permanent, from the other." The Court agrees that the issue and the standards for spousal support are not relevant in this case because spousal support has clearly been contractually barred by both parties. See, e.g., *Owney v. Owney*, 8 Va. App. 255 (1989).

However, defendant also argues that Paragraph (5) is ambiguous and that it is necessary for the Court to interpret the intent and purpose of Paragraph (5). Essentially, the defendant's argument is that the meaning of Paragraph (5) is that the complainant was obligated to make the $700.00 per month payments to the defendant until the underlying "loan" had been paid in full. Her interpretation is that the term "loan" represents whatever the remaining balance was of the $43,600.00 that was originally borrowed by the couple on January 25, 1989.

Initially, it is necessary to look at the precise holding of the Supreme Court in *White v. White, supra*. In that case, the Court had before it an agreement which read as follows:

> I, Russell A. White, do hereby promise to pay the $30,000.00 (Thirty Thousand Dollars) mortgage for the house and property located at 265 Ash Drive, Christiansburg, Virginia 24073. Said payments to be made to First Virginia Bank on a regular monthly basis for 120 (One Hundred Twenty) months. I reserve the right to pay off the mortgage early without penalty. I promise to pay principle [sic] and accrued interest only. I will not pay escrow for taxes, insurance, nor any other purpose. If allowable by current tax codes, I reserve the right to claim mortgage interest as my expense for income tax purposes. This promise to pay the mortgage in no way constitutes liability for said property. In the event of my death, this promise is null and void - it does not pass to my heirs nor to my estate.

Some years after that agreement had been executed, the complainant sold the marital home, and the balance due on the mortgage was paid from the proceeds of the sale. Upon the sale of the home, the husband ceased making any payments directly to the bank and refused to make any payments to Mrs. White. The wife initiated a proceeding to have him held in contempt for failure to make the monthly "mortgage" payments to her.

The Supreme Court noted in reaching its conclusion that both parties in that case conceded, and the Court found, that the language of the agreement was not ambiguous. In a critical part of the Court's holding, the Supreme Court noted that:

> The agreement clearly obligates Mr. White to pay the $30,000 mortgage on the house located at 265 Ash Drive in Christiansburg *to First Virginia Bank in 120 monthly installments. It contains no provision for Mr. White to make any payments to Mrs. White.* Moreover, and of particular significance in this case, nothing within the express terms of the agreement evinces any interest of the parties that Mr. White's obligation would survive the satisfaction of the mortgage debt, regardless of the manner in which that debt was extinguished. [Emphasis added.]

After stating this analysis of the facts, the Supreme Court held:

[W]e hold that the agreement obligated Mr. White to make payments on the mortgage on the marital home so long as that debt existed but did not obligate him to pay a fixed sum to the wife in installments with interest, as she alleged in her bill of complaint and as the trial court subsequently found in the show cause hearing.

There are two aspects of this case which clearly differ from those set forth in *White v. White*. First, Paragraph (5) of the Property Settlement Agreement involved in this case provides that the husband is to make the $700.00 per month payments directly to the wife. Secondly, the obligation of the husband to make these payments terminates upon the occurrence of the earlier of two events: (1) the passage of nine years and eight months from May 31, 1994; or (2) "until the loan is paid in full." There is no requirement contained in this Property Settlement Agreement that the husband is obligated to make "mortgage payments" to the bank or any third party. The contract involved here requires the husband to make $700.00 per month payments to "wife" "representing the mortgage payment on the former marital residence." Secondly, the termination of the obligation in the agreement is conditioned upon the "loan" being paid in full and not upon the "mortgage" being satisfied or released nor upon the underlying "note" representing the debt being paid or released.

Although it is far from being free of doubt, it appears to the Court that this case presents a significantly different fact pattern than is presented in *White v. White*. In this case, the provisions of Paragraph (5) appear to be worded in a way that requires the plaintiff to continue to make the contractually agreed upon payments until the "loan" is paid in full. In any event, the expression "or until the loan is paid in full" is ambiguous and permits the Court to consider parol evidence in determining the intent of the parties.

As is well established in the law, a loan is technically different than a "mortgage" or a "note." If the Property Settlement Agreement had been worded in a way that provided that the husband's obligations would cease upon the "note" having been paid in full and/or of having the "mortgage satisfied," then there would be no question that the husband's interpretation of the agreement would prevail. However, the term "loan" under these circumstances is ambiguous as a matter of law. The parol evidence taken at the hearing indicated quite clearly that the contemplation of the parties and the intent of the parties at the time of the execution of the agreement was that the plaintiff would continue to make payments on the loan on the remaining balance of the $43,600.00 loan which he and the defendant took out on

January 25, 1989, until that "loan" was paid in full. In fact, the Complainant found out the note had been paid off in 1997 because he contacted Beneficial Finance to determine the outstanding balance so *he* could roll the debt into an equity line on his new house. (The reason both parties had interest in refinancing the loan was that the Beneficial note had an interest rate of 18%, whereas the prevailing rate in 1997 was about 9%.)

The defendant's refinancing of the loan in 1997 resulted in the note being paid in full and the mortgagee filing a Certificate of Satisfaction noting that "the note secured by the deed of trust mortgage or other lien described above has been paid in full," but it does not constitute a requirement or curtailment of the underlying loan obligation. The underlying loan was merely transferred in the refinance transaction of June 1997. The remaining balance on the underlying loan described in Paragraph (5) continued and continues to this day. This interpretation of the intent of the parties is bolstered by the fact that the phrase "or until wife sells the property" was deleted from Paragraph (5). This deletion seems to recognize that the payment obligation would continue even if the land were sold. Since the sale of the house would require payment and release of the mortgage and note, the parties evidently contemplated husband making the payment even if the note and mortgage were paid off.

Accordingly, the complainant is hereby ordered to continue to make the payments as provided for in Paragraph (5) of the Property Settlement Agreement above referenced.

The Clerk is directed to send copies of this to William H. Ralston, Jr., Esq., counsel for complainant, and to Lawrence D. Bowers, Jr., Esq., counsel for the defendant.