Richmond

## Dart Drug Corporation, Virginia

### v.

## Demetrios Nicholakos, Et Al., Etc.

April 24, 1981.

Record No. 790194.

Present: All the Justices.

*Burton A. Schwalb [D.C.] (James K. Stewart [D.C.]; David M. Davenport; Schwalb, Donnenfeld, Bray & Silbert [D.C.]; Davenport & Associates, P.C.,* on briefs), for appellant.

*Douglas J. Sanderson (Marc E. Bettius; Russell S. Rosenberger, Jr.; Bettius, Rosenberger & Carter, P.C.,* on brief), for appellees.

CARRICO., C. J., delivered the opinion of the Court.

This appeal involves a declaratory judgment proceeding brought in the court below for the construction of a lease existing between the plaintiff, a partnership composed of Demetrios Nicholakos and George Nickolakos, trading as D & G Associates (D & G), and the defendant, Dart Drug Corporation, Virginia (Dart). D & G owns a shopping center in Fairfax County in which Dart and Safeway Stores are the major tenants. D & G sought a declaration that it had the right under Dart's lease to enlarge Safeway's building and expand the shopping center without Dart's consent. After a hearing, the trial court declared D & G had the right to proceed with its expansion plans without Dart's approval.

Dart occupies store premises in the shopping center under a 20-year lease dated July 15, 1970. A site plan, designated as Exhibit "A" and attached to and made a part of the lease, depicts the layout of the shopping center and the location of its buildings, as contemplated at the time the lease was executed.

In 1977, D & G proposed to enlarge Safeway's 21,000 square-foot building by erecting an addition containing approximately 13,000 square feet. About one-half the addition would be located on the original shopping center tract. This portion of the addition would occupy an area reserved originally for the common use of the center's tenants. The remainder of the addition would be located on other land purchased by D & G to accommodate the expansion.

D & G asked Dart to consent to the proposed expansion. In a letter dated June 8, 1977,[1] Dart refused to consent, claiming the expansion would have "an adverse effect on the shopping center as a whole as well as Dart Drug." Some months later, the present litigation commenced.

The parties rely upon various portions of Dart's lease to support their respective positions. Dart maintains the lease prohibits any expansion absent Dart's consent. D & G insists the lease contains no

---

[1] This letter was referred to in, and made a part of, D & G's motion for declaratory judgment.

restrictions against expansion. The quintessence of the dispute between the parties, however, is found in paragraph 3 of Dart's lease. In pertinent part, this paragraph provides:

3. *Layout and Common Area.*

The location of all the buildings in the Shopping Center, and the layout of the parking and service areas and access and service roads are designated and fixed on Exhibit "A," and shall remain so throughout the term of this Lease. . . . All that portion of the Shopping Center not designated as buildings or service area is to be a common area for the use of the tenants, their customers, invitees and employees. Landlord will maintain, during the term of this Lease, within the Shopping Center, and within any additions thereto or extensions thereof, parking areas for at least six hundred (600) automobiles in accordance with Fairfax County requirements.

During the course of opening statements below, D & G moved for summary judgment. In discussing this motion, the trial court indicated that the first two sentences of paragraph 3 had the effect of prohibiting the proposed expansion. Upon further consideration, the court stated that the language of the third sentence relating to "additions" or "extensions" created an ambiguity requiring the court to hear the "evidence of both sides."

Contrary to what one would have expected, the evidence submitted did not pertain to the intention of the parties to the lease at the time of execution. Instead, D & G submitted evidence concerning the details of the proposed expansion. In turn, Dart attempted to introduce evidence concerning the reasons given D & G for the refusal to consent to the expansion. Upon D & G's objection that this evidence consisted of statements made during an attempt to reach "an accord or compromise," the trial court excluded the evidence.

Thereafter, the trial court found that Dart had drafted the lease and, accordingly, that any ambiguity in the provisions should be construed strictly against Dart. The court found further that, to the extent the lease provisions purported to prohibit expansion, Dart was attempting to enforce restrictive covenants not favored in law. Focusing upon the ambiguity in the language of paragraph 3 caused by the words "additions" or "extensions," the court resolved the ambiguity against Dart and held that the lease did not preclude expansion. Then, noting that Dart, as the author of the lease, had failed to include any

standards for determining when expansion would be permitted, the court held that Dart had the burden of showing "the extension should not be granted." Finally, the court ruled Dart had failed to carry its burden.

On appeal, Dart contends the trial court erred in determining Dart drafted the lease and, accordingly, was subject to a rule of strict construction. While we agree with the trial court's finding that the provisions of the lease concerning expansion are ambiguous, we concur in Dart's assertion that no evidence of the lease's authorship appears in the record. Nothing more appears than argumentative statements by D & G's counsel, unchallenged below by Dart, that Dart prepared the lease.

The lack of evidence on this subject, however, does not relieve Dart from the full impact of a rule of strict construction. Dart does not challenge the trial court's finding that, to the extent the lease provisions purported to prohibit expansion, Dart was attempting to enforce covenants restricting the free use of land. Such covenants are not favored and are construed strictly against the party seeking their enforcement. *Bank* v. *Standard Cary,* 208 Va. 298, 304, 156 S.E.2d 778, 784 (1967). Thus, although the trial court erred in finding that Dart drafted the lease, the error is harmless.

This brings us to Dart's principal contention, *viz.,* that the trial court erred in construing the lease to permit D & G's proposed expansion. In this connection, although the case involves the construction of covenants requiring strict construction, we agree with Dart that the intention of the parties is the controlling factor. *Traylor* v. *Holloway,* 206 Va. 257, 260-61, 142 S.E.2d 521, 523 (1965). Ordinarily, when ambiguous contractual provisions are at issue, extrinsic evidence is available to discern the intention of the parties. Here, however, we have no such extrinsic evidence. We must, therefore, divine the parties' intention from the provisions of the lease, however ambiguous they may be, aided by any practical construction the parties themselves may have placed upon the provisions in dealings subsequent to the lease's execution. *Bank* v. *Standard Cary,* 208 Va. at 306, 156 S.E.2d at 786.

Succinctly stated, it is D & G's position that, because the lease provisions are ambiguous and a rule of strict construction applies to Dart, the lease must be construed to grant D & G an absolute right of expansion. We do not agree. Although contractual provisions may be ambiguous and one of the parties to the agreement may be subject to a rule of strict construction, the interpretation adopted by the

court must be reasonable and just. *Southwest Virginia Hospitals* v. *Lipps*, 193 Va. 191, 205, 68 S.E.2d 82, 90 (1951).

We believe it would be unreasonable to say in this case, as D & G urges us to say, that the language concerning "additions" or "extensions" in Dart's lease gives D & G the unfettered right to expand the shopping center. This interpretation would write out of the lease language indicating D & G has no right to expand. Thus erased would be the provision in paragraph 3 that the "location of all the buildings in the Shopping Center, and the layout of the parking and service areas and access and service roads are designated and fixed on Exhibit 'A,' and shall remain so throughout the term of this Lease. . . . " Also written out of paragraph 3 would be the provision that the "portion of the Shopping Center not designated as buildings or service area is to be a common area for the use of the tenants, their customers, invitees and employees."

On the other hand, it would be equally unreasonable to hold, as Dart would have us hold, that the lease gives Dart the unrestricted right to forestall any expansion of the shopping center. This view would write out of the lease the language concerning "additions" or "extensions," language indicating D & G has some right of expansion.

We do not believe, therefore, that the parties intended their rights should be governed by either of these unreasonable interpretations. Instead, we believe the parties intended a middle-ground approach to the problem of expanding the shopping center. This intention and the middle-ground approach are found in the practical construction the parties themselves placed upon the lease provisions both before this litigation arose and during the course of the proceeding.

When D & G determined to undertake the proposed expansion of the shopping center, it did not then assert that it could proceed without Dart's consent. As Dart points out on brief, D & G's "own conduct demonstrates [D & G's] recognition that the center would not be expanded without Dart's permission. . . . [D & G] came to Dart and requested such permission before attempting to proceed with the proposed expansion." And, when the trial court called for evidence from the parties, D & G assumed the burden of proving that the proposed expansion would have no adverse impact on Dart or, in other words, that the expansion was reasonable.

In the same vein, the record shows clearly that, when D & G asked Dart's consent to the proposed expansion, Dart did not then assert an absolute power of veto over the proposal. Instead, in refusing to grant consent, Dart sought to justify its action on the ground the refusal was dictated by business considerations or, in other words, on the

ground the refusal was reasonable. And, as we will demonstrate later, Dart attempted in the court below to introduce evidence showing the reasonableness of its refusal.

> When the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles.

*L. O'Quinn et al.* v. *P. Looney, et al.,* 194 Va. 548, 552, 74 S.E. 2d 157, 159 (1953). The same rule is indicated in *Blair, Inc.* v. *Housing Authority,* 200 Va. 815, 819, 108 S.E.2d 259, 262 (1959), and *Kiser* v. *Amal. Clothing Workers,* 169 Va. 574, 591, 194 S.E. 727, 734 (1938).

■ We are of opinion, therefore, that the lease provisions should be interpreted to mean that D & G has the right to make reasonable expansion of the shopping center, subject to obtaining Dart's consent, which consent shall not be withheld unreasonably. Applying this interpretation to the proceedings below, we believe the burden was upon D & G, the moving party, to establish the reasonableness of the proposed expansion in light both of the circumstances that prompted inclusion of the disputed lease provisions in the first place and of the impact the expansion would have upon the shopping center in general and upon Dart in particular. This showing was necessary to permit a determination whether the proposed expansion was of a scope and character contemplated by the parties to the lease at the time of execution.

Upon the presentation by D & G of evidence establishing the prima facie reasonableless of the proposal, the burden would have shifted to Dart to go forward with evidence showing the unreasonableness of the proposal or the reasonableness of the refusal to consent. Here again, the contemplation of the parties to the lease at the time it was executed and the impact of the proposed expansion would have been proper subjects of inquiry.

■ We will assume, without deciding, that the evidence submitted below by D & G was sufficient to establish the prima facie reasonableness of the proposed expansion.[2] When, however, Dart attempted to

---

[2] It should be pointed out, however, that D & G presented no evidence concerning the circumstances that prompted inclusion of the disputed lease provisions in the first place. There was no basis, therefore, for a determination whether the proposed expansion was of a scope and character contemplated by the parties to the lease at the time of execution. But, because no assignment of error relates to this insufficiency of evidence, we will assume, without deciding, that D & G's evidence was sufficient to show the prima facie reasonableness of the proposal.

introduce evidence concerning the reasons it gave D & G for the refusal to consent, the trial court sustained D & G's objection to the evidence on the ground the statements were made during settlement negotiations. We sustain Dart's assignment of error to this ruling. Nothing in the record indicates settlement negotiations were underway between the parties at the time the statements were made. Indeed, in this connection, the record discloses only a request from D & G for Dart's consent and Dart's refusal, with a statement of its reasons.

D & G contends, however, that we should not consider this assignment of error because Dart did not make proper proffer of the evidence it sought to introduce. We disagree. It is clear from the record that Dart was attempting to show the reasonableness of its refusal to consent and that the trial court was well aware of the character of the evidence offered. In sustaining D & G's objection, the trial judge told Dart's counsel: "I don't care why [Dart] said no. I say that to you respectfully. It doesn't matter to me."

For the error in excluding Dart's evidence, we will reverse the judgment of the trial court and remand the case for a new trial not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*