## CIRCUIT COURT OF WARREN COUNTY

The Humane Society
of Warren County, Inc.

v.

St. Joseph Group, Inc.

February 3, 1999

Case No. (Chancery) 98-191

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on February 3, 1999, on the issue of whether an animal shelter was a permitted industrial use under the Economic Development Authority's restrictive covenants. The parties appeared with their counsel. Oral argument was heard, and the parties agreed that the case could be decided on their arguments and prefiled exhibits and findings of fact and conclusions of law. The Court has made the following decision that an animal shelter is a permitted use under the restrictive covenants.

### I. *Findings of Fact*

The following facts are not in dispute.

The Industrial Development Authority of the Town of Front Royal and Warren County, Virginia, also known as the Economic Development Authority (hereinafter the "EDA"), is the owner of Lot 10 in the Happy Creek Industrial Park in Front Royal, Virginia.

The lots in the Happy Creek Industrial Park are subject to certain Covenants and Restrictions running with the land (hereinafter the "Restrictions"). The Restrictions provide in pertinent part:

Section No. 1, *"Use of Land*. This property shall be used only for industrial purposes, including but not necessarily limited to manufacturing, warehousing, distribution, business offices, research facilities, wholesale trade and any other use deemed by the Authority to be of a similar character."

Section No. 5, *"Approval of Use.* The Authority [EDA] reserves the right to approve the specific use of any property at the time of the original sale ...."

Section No. 13, *"Land Uses.* All applicable Town, State and Federal laws shall apply."

Section No. 15. "No operation ... or building use ... shall produce or effect noise ... or odors to an extent or quality as to endanger or to be detrimental to the public health, safety, comfort, or welfare of the park or of the community ...."

Section No. 16, reserves the right in the authority to modify or waive the restrictions; "however, no such modifications, alterations, or amendment shall apply to existing grantees or owners or to persons or entities with binding contracts to purchase or lease parcels of land in the park, without the consent of such grantee, owner, person, or entity."

Section No. 22, provides that the EDA's approval of plans shall be "solely to protect the aesthetics of the park and to promote the judicious use of property therein."

By deed dated December 12, 1996, the Defendant acquired Lot 14, in Happy Creek Industrial Park from the EDA, and this deed recited "that this conveyance is made subject to restrictions, reservations, easements, and agreements of record to the extent that they may lawfully apply to the property hereby conveyed."

By Agreement of Purchase dated November 24, 1998, (hereinafter the "Agreement") the EDA agreed to sell to the Humane Society Lot 10, Happy Creek Industrial Park. A contingency in the Agreement, Paragraph 7.2, p. 9, is that the Seller and Purchaser shall have obtained a final, non-appealable Order/Decree of this Court establishing that the proposed use of said Lot 10 constitutes a permitted "industrial use" under the Restrictions and in accordance with the Town of Front Royal Zoning Ordinance.

The Humane Society and the EDA intend that Lot 10 be used by the Humane Society as an animal shelter and kennel for the humane sheltering and

disposal of dogs and cats. In paragraphs 7.1 and 7.2 of the Agreement, the EDA has determined that the Humane Society's proposed use constitutes a permissible industrial use within the meaning of the Restrictions.

The Happy Creek Industrial Park is zoned by the Town of Front Royal as the "I-2" Industrial Employment District. Section 175-65A(15) of the Front Royal Town Code, which became law in 1989, provides that uses of land and buildings that are permitted by right in the "I-2" Industrial Employment District include any use permitted in the "I-1" Light Industrial District. Section 175-55.A(17) of Front Royal Town Code provides that structures and uses of land permitted by right in the "I-1" District include veterinary hospitals and kennels. Substantially identical Front Royal zoning provisions applying to such zoning districts have been in effect in the Town of Front Royal since January 1, 1960. On November 4, 1998, R. Hap Sharp, Zoning Administrator of the Town of Front Royal, issued an official written zoning determination of the Town of Front Royal that "[d]ue to the similarities of the Humane Society's operation and veterinary hospitals and kennels, my official determination is that the Humane Society would be allowed in the I-2 Industrial Employment District as a use permitted by right." This written zoning determination has been in the actual receipt of the Defendant for more than thirty days and has not been appealed by the Defendant.

The EDA has always considered an animal shelter and kennel of the type contemplated for Lot 10 to be an industrial use. Such a use was considered an industrial use in the applicable Front Royal Zoning Ordinances long before the Defendant acquired Lot 14.

The Defendant, through its President and by its counsel, has advised the EDA that it does not consider the Humane Society's proposed use of Lot 10 to be an industrial use, and that such proposed use, if put into effect, would be a violation of the Restrictions and that Defendant opposes such proposed use.

With the exception of the Defendant, all owners of lots in the Happy Creek Industrial Park have previously agreed and acknowledged that the Humane Society's proposed use of Lot 10 as an animal shelter and kennel constitutes a permissible "industrial use" in the Happy Creek Industrial Park.

The animal shelter proposed to be constructed by the Humane Society on Lot 10 is a place for the shelter, boarding, veterinary treatment, and euthanasia of dogs and cats.

There exists between the parties an actual controversy and an actual assertion and denial of rights.

## II. *Conclusions of Law*

The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties is the controlling factor. *Dart Drug v. Nicholakos*, 221 Va. 989, 993, 277 S.E.2d 155 (1981). "In considering this issue ... [the Court] ... must determine, from the language used in the restrictive covenants and in the light of the circumstances under which they were written, what purposes the parties intended the covenants to serve." *State-Planters Bank v. Standard Cary Corp.*, 208 Va. 298, 304, 156 S.E.2d 778 (1967). The Happy Creek Industrial Park restrictive covenants were written with the intention that the term "industrial" would conform to the meaning and permitted uses of the Town of Front Royal zoning district ordinances.

"Restrictions on the use of property are not favored; they must be strictly construed against the party, here the Defendant, seeking to enforce the restriction; and substantial doubt or ambiguity must be resolved against the restriction and in favor of the free use of the property." *Bain v. Bain*, 234 Va. 260, 263, 360, S.E.2d 849 (1987). The Defendant has the burden of establishing that the Restrictive Covenants prohibit the intended use of the Humane Society and the EDA. *State Planters Bank v. Standard Cary Corp.*, 208 Va. 298, 304, 156 S.E.2d 778 (1967). The Defendant has not met this burden.

If ambiguous contractual provisions are at issue, extrinsic evidence is available to discern the intention of the parties. *Dart Drug v. Nicholakos*, 221 Va. 989, 993, 277 S.E.2d 155 (1981). The term "industrial" is a very board term, and it must be construed in light of the circumstances which existed when the covenants were written. In this context it is a land use term and will be construed as such. When these covenants were written, the Happy Creek Industrial Park was located in the Town of Front Royal in an industrial zone which expressly permitted veterinary hospitals and kennels as a matter of right.

"Kennel" in its ordinary meaning, is "[a] shelter for a dog ... [a] place where dogs are bred, trained or boarded." *Webster's II, New Riverside University Dictionary*, Houghton Mifflin Co., 1994. "Veterinary" refers to the diagnosis and treatment of diseases and injuries of animals, especially domestic animals. *Webster's II, New Riverside University Dictionary*, Houghton Mifflin Co., 1994. The proposed animal shelter is a place for the shelter, boarding, veterinary treatment, and euthanasia of dogs and cats. The daily functions of the animal shelter with respect to living animals is the same as that of a kennel, and the Defendant did not dispute the fact that a kennel was a permitted use, but rather argued that a kennel and an animal shelter are

different. While they may be different in philosophy and while the life expectancy of an animal entering a kennel may be greater than that of an animal entering an animal shelter, the daily functions of the two are essentially the same, and their impact upon the property and the environs is essentially the same.

The Humane Society, a non-profit animal shelter, promotes the safety, health and welfare of the community and so fosters the statutory purposes of the EDA.

The Humane Society has no adequate remedy at law, and pursuant to Va. Code § 8.01-184 is entitled to a determination of the rights of the parties under the Restrictions and Agreement, so that Lot 10 may be sold to The Humane Society for the purpose of constructing and operating an animal shelter and kennel as proposed by the Humane Society.

### III. *Decision*

For the foregoing reasons, it is adjudged and decreed that:

The Humane Society's proposed use of Lot 10 for the construction and operation of an animal shelter and kennel is a permitted industrial use within the meaning of the Restrictions applicable to the Happy Creek Industrial Park.

The Humane Society's proposed use is a permitted industrial use as a matter of right under the applicable Town of Front Royal zoning ordinances, so that Lot 10 may be sold to the Humane Society for the purpose of the construction and operation of an animal shelter and kennel as proposed by the Humane Society.