COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Malveaux and Athey
Argued by videoconference


CHRISTOPHER WESTLEY DEMPSEY

                                          MEMORANDUM OPINION* BY
v.        Record No. 0913-20-4          JUDGE MARY BENNETT MALVEAUX
                                                 APRIL 20, 2021
STEPHANIE McQUADE DEMPSEY


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

C. Dean Kime (Dennis M. Hottell; Maddox & Gerock, P.C., on
briefs), for appellant.

Melinda L. VanLowe (The Law Office of Melinda L. VanLowe, PC,
on brief), for appellee.[1]


        Christopher Westley Dempsey ("husband") appeals orders of the Arlington Circuit Court

("circuit court") granting Stephanie McQuade Dempsey's ("wife") motion to enforce the parties'

final order of divorce and entering a Court Order Acceptable for Processing ("COAP").  On appeal,

husband argues that the circuit court erred (1) in ordering that the COAP provide wife with a

survivor benefit in connection with his federal employee retirement system disability retirement

benefits ("FERS annuity") because the parties' marital separation agreement ("MSA") did not

award wife such a benefit; (2) in entering the COAP provided by wife because the material

provisions of the COAP as entered differed from the terms of the parties' MSA; (3) by awarding

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Following oral argument, this Court granted VanLowe's motion to withdraw as counsel
for wife.  Kim Huguley was substituted as counsel for wife.

wife attorney's fees for the preparation of the COAP and for her motion to enforce; and (4) by not awarding husband attorney's fees. For the following reasons, we affirm.

## I. BACKGROUND

Husband and wife married on May 23, 1998. On March 9, 2020, the parties executed an MSA that settled the issues of child custody, child support, spousal support, health and life insurance, and property division. On March 10, 2020, the circuit court entered a final decree of divorce that incorporated but did not merge the parties' MSA into the final decree.

On April 23, 2020, wife filed a motion titled "Motion to Enforce Final Order of Divorce." In this motion, wife moved the circuit court to "enforce" Paragraphs 4 and 14 of the MSA. Wife alleged that, pursuant to Paragraphs 4 and 14 of the MSA, husband had agreed that wife would receive a survivor benefit related to his FERS annuity.[2] Wife further stated that although husband was obligated to pay for preparation of the COAP by the terms of the MSA, he received advice from counsel that the MSA did not provide wife with a FERS survivor benefit and therefore refused to sign a COAP that included this benefit. Wife moved the court to enter her proposed COAP and order husband to pay her attorney's fees related to the preparation of the COAP. Wife also asked the court to award her attorney's fees and costs related to her motion, pursuant to a provision of the parties' MSA providing for attorney's fees for the successful enforcement of the MSA. Wife further stated that she had prepared an addendum to the MSA for

---

[2] Pursuant to federal regulations, a FERS member can designate a former spouse as the recipient of a portion of his or her retirement upon that party's death. See 5 C.F.R. § 843.307 (providing for benefits upon death of FERS disability retiree); 5 C.F.R. § 843.312 (allowing for death benefits to be "payable to a former spouse instead if the former spouse is entitled to that benefit under the terms of a qualifying court order").

husband's execution that husband refused to sign and asked the court to require husband to sign this addendum.[3]

On May 1, 2020, husband filed a response in opposition to wife's motion to enforce. In his motion, husband argued that the plain and unambiguous terms of the parties' MSA did not require him to prepare a COAP providing wife with a survivor benefit in connection with his FERS annuity. Husband also asserted that the parol evidence rule precluded consideration of any evidence extrinsic to the MSA to contradict, add to, or explain the terms of the parties' agreement. Husband further argued that wife was not entitled to her expense in preparing a COAP because any delay in the process was due solely to the disagreement as to whether the MSA provided wife with a FERS survivor benefit. Finally, husband argued that wife was not entitled to attorney's fees regarding the motion before the court because even if she succeeded on the merits, her motion would not be one enforcing any covenants or provisions in the MSA.

On July 10, 2020, the circuit court held a hearing on wife's motion to enforce. Neither party testified at the hearing, which consisted solely of argument from counsel. At the conclusion of the hearing, the court stated, "All right. I'm going to grant the motion and -- at this time and enforce the final order." The court also granted an award of attorney's fees to wife in relation to the preparation of the COAP, but reserved its ruling on the issue of attorney's fees in relation to the motion to enforce.

Following the hearing, wife filed a motion for attorney's fees in reference to her motion to enforce. Wife also filed a motion requesting the court to enter her proposed COAP, as husband had not signed the document due to objections as to its drafting.

---

[3] This addendum included language, under a heading titled "FERS Survivor's Benefit Program," that "[u]nder section 834(h)(l) of title 5, United States Code, Wife is awarded a full former spouse survivor benefit annuity under Husband's Federal Employee Retirement System benefits."

On July 24, 2020, the circuit court held a hearing on the issues concerning the entry of the COAP and attorney's fees. During this hearing, counsel for husband argued that the COAP did not conform to the terms of the MSA because the FERS survivor benefit in the COAP lacked the language from the MSA providing that it would terminate upon wife's remarriage or relationship analogous to marriage for a period of one year or more. Husband also asserted that the COAP was contrary to the provisions of the MSA because it provided for wife to receive a portion of his FERS annuity for 115 months instead of using the specific termination date set out in the MSA.

At the conclusion of the hearing, the court ruled that wife's proposed COAP would be entered. The court also awarded wife half of her attorney's fees in connection with the motion to enforce. This appeal followed.

## II. ANALYSIS

### A. Survivor Benefit

Appellant argues that the plain and unambiguous terms of Paragraphs 4 and 14 of the MSA do not provide wife with a survivor benefit in connection with his FERS annuity, thus the court erred in entering a COAP granting wife this benefit.

Paragraph 4 of the MSA is titled "GI Bill and Survivor's Benefit Program." This paragraph consists of two subsections. Subsection A provides that husband will allocate his GI Bill benefits to the parties' minor children. Subsection B reads as follows:

> Survivor's Benefit Program: Wife is currently named as the beneficiary on Husband's Survivor Benefit Plan and she shall remain the beneficiary until she dies, remarries, or is in a relationship analogous to marriage for a period of one (1) year or more. Husband and wife shall share the cost of maintaining the Survivor Benefit equally.

Subsections b and d of Paragraph 14 of the MSA, titled "Pension/Retirement Plans and Accounts," read in part as follows:

b. Wife will receive the non-modifiable amount of Two Thousand Four Hundred dollars ($2,400.00) per month for a period of ten (10) years, from March 1, 2020 to March 1, 2030, from Husband's FERS Disability Retirement Annuity . . . . The Two Thousand Four Hundred dollar ($2,400.00) per month amount will not increase or decrease if Husband's monthly FERS Disability Retirement Annuity amount increases or decreases, including as a result of any cost of living adjustments. Husband is entitled to retain the FERS Disability Retirement Annuity, less Two Thousand Four Hundred dollars ($2,400.00) per month, as his sole and separate property. The monthly sum of the FERS Disability Retirement Annuity due to Wife, shall be transferred to an account in Wife's name by a Court Order Acceptable For Processing, (COAP).

d. In the event Husband becomes eligible for a military pension, Husband will provide written notice to Wife thereof within seven (7) days of Husband receiving notice of Husband's Eligibility, and Wife will be entitled to receive her one-half marital share.

The parties' MSA represents a contract, and this Court construes it using the same rules applicable to contracts. Stroud v. Stroud, 49 Va. App. 359, 366 (2007). "On appeal, [this] Court reviews a trial court's interpretation of a contract *de novo*." Allen v. Allen, 66 Va. App. 586, 595 (2016) (alteration in original) (quoting Plunkett v. Plunkett, 271 Va. 162, 166 (2006)). "In construing the terms of a property settlement agreement, just as in construing the terms of any contract, [this Court is] not bound by the trial court's conclusions as to the construction of the disputed provisions." Id. (alterations in original) (quoting Smith v. Smith, 3 Va. App. 510, 513 (1986)). "[I]f all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this [C]ourt." Id. (alterations in original) (quoting Fry v. Schwarting, 4 Va. App. 173, 180 (1987)).

"Because a separation agreement is a contract and must be construed as such . . . the intent of the parties as expressed in the contract controls." McLellan v. McLellan, 33 Va. App. 376, 383 (2002) (alteration in original) (quoting Gayler v. Gayler, 20 Va. App. 83, 86 (1995)).

- 5 -

We glean "the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Boedeker v. Larson, 44 Va. App. 508, 519 (2004) (quoting Layne v. Henderson, 232 Va. 332, 337-38 (1986)). "When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." Stacy v. Stacy, 53 Va. App. 38, 44 (2008) (quoting Palmer & Palmer Co. LLC v. Waterfront Marine Constr., Inc., 276 Va. 285, 289 (2008)).

However, "[w]hen a contract is ambiguous . . . a court should resort to parol evidence to ascertain the true intention of the parties." Aetna Cas. and Sur. Co. v. Fireguard Corp., 249 Va. 209, 215 (1995). "An agreement should be deemed 'ambiguous if it may be understood in more than one way or when it refers to two or more things at the same time.'" Vilseck v. Vilseck, 45 Va. App. 581, 588 (2005) (quoting Video Zone, Inc. v. KF & F Props., 267 Va. 621, 625 (2004)). But "[a] contract term is not ambiguous merely because the parties disagree as to the term's meaning." Bergman v. Bergman, 25 Va. App. 204, 211 (1997). Rather, "it must be objectively reasonable to understand the contractual language 'in more than one way' or to conclude that it 'refers to two or more things at once.'" Vilseck, 45 Va. App. at 588-89 (quoting Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp., 263 Va. 169, 173 (2002)). "When the language of a contract is ambiguous, parol evidence is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties . . . [and] to determine the intention of the parties." Stroud, 49 Va. App. at 367 (alterations in original) (quoting Tuomala v. Regent Univ., 252 Va. 368, 374 (1996)). "The question whether contract language is ambiguous is one of law, not fact." Plunkett, 271 Va. at 166-67.

A reading of the MSA demonstrates that husband is potentially entitled to two separate retirement accounts. First, it is clear from the MSA that husband was entitled to and was receiving a monthly FERS annuity due to his disability retirement from his prior federal

government employment. Second, the MSA states that wife is entitled to half of the marital share of husband's military pension "[i]n the event" that "[h]usband becomes eligible" for such retirement plan. Here, the parties disagree as to what retirement account the parties were referencing when wife was awarded a survivor benefit in Paragraph 4 of the MSA.[4] Husband asserts that a clear and unambiguous reading of the entire MSA supports his argument that the survivor benefit found in Paragraph 4 applies to his military retirement, while wife argues that it applies to his FERS annuity.

Husband presents two main arguments as to why the MSA's plain language demonstrates that the survivor benefit found in Paragraph 4 applies to his military retirement. We reject both, finding that neither establishes through the MSA's plain wording that the benefit is in connection with his military as opposed to FERS retirement.

First, we reject husband's argument that the survivor benefit applies to his military retirement based upon the survivor benefit's placement in the MSA. The heading of Paragraph 4, the section of the MSA containing the survivor benefit language, is "GI Bill and Survivor's Benefit Program." This paragraph contains only one other subsection which discusses husband's GI Bill benefits. Husband argues that the title of the section and the fact that the only other provision in the section is related to his military benefits demonstrates that the survivor benefit at issue is also military related. We first note that the title of the section is not controlling. See Donnelly v. Donatelli & Klein, Inc., 258 Va. 171, 180 (1999) ("[W]hile labels may be helpful in determining contractual intent, they are not controlling."). Further, we find that the heading here is not entirely supportive of husband's argument. The heading itself discusses two separate

---

[4] As with FERS, military retirement plans allow for a servicemember to designate a former spouse as the recipient of a portion of his or her pension upon the servicemember's death. See 10 U.S.C. § 1450 (allowing for a military servicemember's retired pay to pass to an eligible beneficiary upon the death of the member).

- 7 -

benefits, "GI Bill *and* Survivor's Benefit Program," rather than using a collective heading such as "Military Benefits." (Emphasis added). Thus, while the GI Bill benefits relate to husband's military service, there is no clear indication from the plain language of the heading that the Survivor's Benefit Program as used in that title is also military related. In addition, while the two benefits are grouped together in one section, we again do not find that this provides clear evidence of the parties' intent in regard to the survivor benefit.

Second, we also reject husband's argument that the term "Survivor Benefit Plan" is a term of art in this context. The plan allowing for a military servicemember's retired pay to pass to an eligible beneficiary upon the death of the member is titled "Survivor Benefit Plan." See 10 U.S.C. § 1448(a)(1) ("The program established by this subchapter [providing for survivor benefits for military servicemembers] shall be known as the Survivor Benefit Plan."). Husband argues that when the parties used the term of art "Survivor Benefit Plan" in the MSA, the parties were clearly referring to husband's military benefits alone. We acknowledge that in interpreting contractual provisions, "[t]echnical terms or words of art will be given their technical meaning." 11 Williston on Contracts § 32:4 (4th ed. 2012); see also Roanoke v. Blair, 107 Va. 639, 641-42 (1907) (stating that, in interpreting contractual provisions, "words of a definite legal significance, or which have a well defined primary meaning, are to be understood as used in such sense, unless there appear in the writing a manifest intention of using them in a different sense"). However, we conclude that the term "Survivor Benefit Plan" is not a term of art in the context of the parties' MSA. "Term of art" is defined as "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts." Term of Art, Black's Law Dictionary (11th ed. 2019). The term "Survivor Benefit Plan" does not have a specific, precise meaning in Virginia domestic relations law, and thus we do not conclude that the parties specifically intended to reference the military retirement benefit by the use of this

term in the MSA, especially when here there was no reference to the federal statute providing for military retirement survivor benefits in the agreement.

Contrary to husband's contentions, we conclude that we cannot discern the parties' intent regarding the survivor benefit based upon the plain wording of the MSA. The plain language of the MSA provides only that wife was "currently named as the beneficiary on Husband's Survivor Benefit Plan and . . . shall remain the beneficiary until she dies, remarries, or is in a relationship analogous to marriage for a period of one (1) year or more." Further, the parties would "share the cost of maintaining the Survivor Benefit equally." Nothing in the plain language setting out this benefit makes clear whether the parties were referencing husband's FERS annuity or his military retirement. Absent from the survivor benefit language is any reference to husband's FERS benefits or military retirement benefits. Because there is no indication from the plain language of the survivor benefit provision as to whether it applies to husband's FERS annuity or to his military retirement, we conclude this provision is ambiguous.

Because we find ambiguity in the terms of the MSA, we review the parol evidence provided to the circuit court "to determine the intention of the parties." Stroud, 49 Va. App. at 367 (quoting Tuomala, 252 Va. at 374).[5] Wife attached several exhibits to her motion to enforce,

_____

[5] In its ruling, the circuit court did not make clear whether it determined that the survivor benefit applied to husband's FERS annuity based on the plain language of the parties' MSA or if it considered parol evidence in making its decision. However, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978 (1977). Thus, we assume the circuit court considered the parol evidence provided by the parties in making its determination.

Husband also takes issue with the court's statement in its ruling that it was granting wife's motion "because based upon my reading of what this is, is that that's what should have happened." Husband argues that this statement demonstrated that the court was improperly modifying the parties' MSA instead of applying its plain terms. We disagree, as this statement can be read as the court simply stating that wife should receive a survivor benefit in connection with husband's FERS annuity because that was the parties' intention as demonstrated by the parol evidence.

- 9 -

including email communication between the parties' attorneys showing that on April 2, 2020, counsel for wife asked counsel for husband for an explanation of a payment made to wife. Counsel for husband explained that this payment was "April 2020 FERS: $2,128.00 ($2,400 award less $272 for half of SBP)." Husband's explanation for his payment shows that he paid wife her monthly $2,400 from his FERS annuity while subtracting $272 for "half of SBP." Thus the "SBP," or survivor benefit plan, is clearly related to his FERS annuity. Further, his actions track the language found in Paragraph 4(B) of the MSA, where the parties agreed that "[h]usband and [w]ife shall share the cost of maintaining the Survivor Benefit equally." In deducting the premium for the survivor benefit from wife's FERS payment, husband demonstrated that he understood that the parties' agreement was for wife to be awarded a survivor benefit in connection with his FERS annuity. "It is long established that '[w]hen the terms of an agreement are . . . uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed.'" Stroud, 49 Va. App. at 368 (alterations in original) (quoting Dart Drug Corp. v. Nicholakos, 221 Va. 989, 995 (1981)). Husband's own actions showed that he was aware that the survivor benefit contained in Paragraph 4 applied to his FERS annuity. Therefore, the circuit court did not err in entering a COAP providing wife with a FERS annuity survivor benefit.

### B. COAP Terms

Husband further contends that the circuit court erred in entering wife's proposed COAP that materially varied from the terms of the MSA.

"Where the court affirms, ratifies and incorporates by reference in its decree [an] agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Code § 20-109.1. Code § 20-107.3(K) provides for the continuing jurisdiction of a circuit court to enter orders

- 10 -

"necessary to effectuate and enforce any order entered pursuant to [that] section." This includes the authority to enter qualified domestic relations orders dividing a party's retirement account after the expiration of twenty-one days following the entry of the final decree. See Caudle v. Caudle, 18 Va. App. 795, 797 (1994) (noting that Code § 20-107.3(K)(4) "creates a limited exception to the strict directive of Rule 1:1"). However, the qualified domestic relations order entered may not "modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances"; rather, it must be "consistent with the substantive provisions of the original decree." Id. at 798.

Husband contends the circuit court erred in entering the COAP because it varied from the MSA in two ways—the COAP as entered did not contain the automatic termination language found in the MSA, nor did it include the termination date set forth in the MSA. We conclude that neither modification constituted a substantive change from the provisions of the MSA.

In regard to the termination language in the MSA, the agreement provides in Paragraph 4(B) that wife would remain the beneficiary of the survivor benefit "until she dies, remarries, or is in a relationship analogous to marriage for a period of one (1) year or more." This language was not included in the COAP entered by the circuit court. We conclude the omission of this language from the COAP was not a substantive change from the terms of the MSA because husband still retained the ability to terminate his monthly payments if wife entered into such a relationship. The only effect resulting from the absence of the termination language would be that wife's payments would not automatically end upon her remarriage or entry into a relationship analogous to marriage. Because any potential effect would be procedural in nature rather than substantive, the lack of termination language in the COAP was not an impermissible modification of the parties' MSA.

As for the termination date of the FERS annuity payments, the MSA provides in Paragraph 14 that wife "will receive the non-modifiable amount of Two Thousand Four Hundred dollars ($2,400.00) per month for a period of ten (10) years, from March 1, 2020 to March 1, 2030, from Husband's FERS Disability Retirement Annuity."  The MSA further provides that

> [i]n the event that the federal government agency and/or financial institution that will transfer funds to Wife does not begin the transfer process upon entry of the Final Order of Divorce, Husband shall be responsible for making these payments each month to Wife until the federal government agency and/or financial institution begins making these payments to her directly, and said payments are due on the first day of each month.

The COAP entered by the circuit court does not include the termination date of March 1, 2030. Instead, it provides that payments to wife will terminate upon "the payment of ONE HUNDRED FIFTEEN (115) monthly payments to the [wife]."  During the hearing before the circuit court on this issue held July 24, 2020, following the entry of the final decree in March 2020, counsel for wife told the court that she had included the term of 115 months to take "into account the five months that it's been before this [c]ourt," during which husband was making the FERS annuity payments directly to wife.  She represented to the court that the Office of Personnel Management ("OPM") needed "the total of months" instead of an end date because that is what she thought the agency would "accept."

Because the inclusion of a term of months instead of a termination date did not change the timing or amount of payments, we conclude that the absence of the specific termination date was a not modification of the substantive provisions of MSA.  In the MSA, wife was awarded ten years of monthly payments from husband's FERS annuity, which would commence on March 1, 2020 and terminate on March 1, 2030.  The MSA further provided that in the event that the OPM did not begin making payments to wife upon entry of the final decree of divorce, husband would pay wife directly until OPM began making its payments.  At the hearing before

- 12 -

the circuit court, held on July 24, 2020, it was not disputed that since March 2020 husband had been making direct payments from his FERS annuity to wife on the first of each month, as mandated by the MSA, for a total of five months of payments. The COAP's 115-month term added to the five months of husband's prior payments amounts to a total of 120 months, or ten years. Modifications that "alter critical terms of the [equitable distribution order], such as timing or amount of payments, exceed the authority granted under Code § 20-107.3(K)(4)." Turner v. Turner, 47 Va. App. 76, 80 (2005) (quoting Hastie v. Hastie, 29 Va. App. 776, 781 (1999)). Here, the absence of the March 1, 2030 termination date did not alter the timing or amount of payments. The parties agreed that husband would pay a portion of his FERS annuity to wife for ten years and that is what the COAP effectuates, only by using a term of months instead of a termination date. Accordingly, the circuit court did not err in entering a COAP without the March 1, 2030 termination date.[6]

## C. Attorney's Fees at Trial

Husband further argues that the circuit court erred in granting wife her attorney's fees in relation to the preparation of the COAP and for her motion to enforce the final decree of divorce.

In exhibits attached to their motions before the circuit court, wife and husband both provided emails between their respective counsel demonstrating the parties' actions in relation to the preparation of the COAP. The emails show that on April 2, 2020, about three weeks after the

---

[6] Husband argued at the hearing before the circuit court that OPM would take several months to process the COAP and that this delay would result in an overpayment to wife because he was obligated to pay wife directly prior to OPM processing the COAP. However, he provided no evidence other than the representations of his counsel regarding the federal agency's processing times or procedures. The COAP was entered on July 24, 2020, the same date of the hearing, and as of that date the COAP provided exactly what the parties agreed on—that wife would receive a total of ten years of payments from husband's FERS annuity. Further, in the event of any delay in the processing of the order, husband has the ability to seek a court order for overpayments that might ensue from the timing of OPM's initial distribution of funds to wife.

parties' divorce decree was entered, counsel for wife asked counsel for husband whether husband had retained an attorney to prepare the COAP. That same day, counsel for husband responded that Sarah Broder, an attorney that wife's counsel suggested prepare the COAP, had informed counsel for husband that she was unsure if it was possible to set up a term or time-limited division of the FERS annuity, and until counsel for husband had certainty over this issue, husband would make the FERS annuity payment directly to wife. On April 6, 2020, counsel for wife emailed counsel for husband and asked if husband objected to wife retaining Broder to complete the COAP. Husband replied that he "object[ed] to [counsel for wife] unilaterally retaining an attorney for the FERS COAP at this juncture, especially if I am responsible for the cost involved." He further stated that "efforts toward a suitable COAP will prove futile" because OPM would "not respect a division of FERS that automatically terminates after ten (10) years."

Counsel for wife emailed husband and told him that his actions were "a violation of the MSA" and that he would further violate the MSA if he refused to sign or pay for the preparation of a COAP that she would "arrange to be prepared." Husband responded that he did "not have an objection in principle to a COAP" but was "concerned that OPM will not recognize or honor a time-limited FERS division." He stated that he had "reached out to Ms. Broder and offered to pay her retainer to formally research this issue and proffer a written opinion as [to] the efficacy of a time-limited FERS division" and would keep counsel for wife "posted" regarding Broder's progress.

On April 8, 2020, counsel for wife told husband that because husband claimed that a COAP could not be entered pursuant to the terms of the MSA, wife would retain counsel to prepare a COAP. In response, husband told counsel for wife that he had retained Broder and that she was working on the issue. He stated that as he had retained Broder, he objected to counsel for wife hiring an attorney to prepare a COAP.

Following this exchange, on April 9, 2020, counsel for wife emailed a draft COAP, prepared by an attorney retained by wife, to Broder. In the email, counsel for wife stated, "We will need to add language about the survivor benefit." In an April 10, 2020 email, Broder told counsel for wife that she did not see a provision for a FERS survivor benefit in the parties' MSA. Counsel for wife emailed back that she would "add that," and then emailed a second draft COAP to Broder. Broder again told counsel for wife that she did not believe the parties' MSA included a FERS survivor benefit, and counsel for wife responded that it was located in Paragraph 4 of the MSA. Broder disagreed, stating that Paragraph 4 "refer[ed] to the Survivor Benefit Program, which is for the military, not FERS." Broder noted in a later email that there was "no reference in Paragraph 4 to FERS."

In an April 21, 2020 email to counsel for wife, Broder stated that "the language in the MSA clearly does not provide a Former Spouse Survivor Annuity under the FERS to your client" and that husband had "fulfilled his obligations under [the MSA] and taken all reasonable and necessary actions to process the COAP in a timely fashion to enforce the terms of the [MSA] as written." Broder attached a draft COAP to this email that she stated was "in accordance with the terms of his [MSA]" and asked counsel for wife to have wife sign the document and return for husband's signature.

"It is well-settled that parties may 'adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute.'" Jones v. Gates, 68 Va. App. 100, 107 (2017) (quoting Ulloa v. QSP, Inc., 271 Va. 72, 81 (2006)). Code § 20-109(C) provides that in divorce cases where the parties have an agreement, "no decree or order directing the payment of . . . counsel fee . . . shall be entered except in accordance with that stipulation or contract." "[T]he statutory proviso, that no order 'shall be entered except in accordance with the . . . contract,' requires the trial judge to examine the parties' agreement to ascertain whether the

- 15 -

relief sought by the moving party is encompassed within the terms of the agreement." Rutledge v. Rutledge, 45 Va. App. 56, 63 (2005).

"[P]roperty settlement agreements are contracts and subject to the same rules . . . of interpretation as other contracts." Irwin v. Irwin, 47 Va. App. 287, 292-93 (2005) (quoting Smith, 3 Va. App. at 513). "In reviewing a property settlement agreement, the court must determine 'the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used.'" Jones, 68 Va. App. at 105 (alteration in original) (quoting Layne, 232 Va. at 337-38). "Where there is no ambiguity in the terms of a contract, [this Court] must construe it as written." Smith, 3 Va. App. at 514. "The trial court's interpretation of the PSA is an issue of law that we review *de novo*." Stacy, 53 Va. App. at 43.

In addition to setting out the sum of money wife was to receive from husband's FERS annuity, Paragraph 14 of the parties' MSA also includes the following language:

> The monthly sum of the FERS Disability Retirement Annuity due to Wife, shall be transferred to an account in Wife's name by a Court Order Acceptable For Processing, (COAP). Husband shall pay the expense for preparation of the COAP, and for preparation of a Transmittal letter to the Plan Administrator. The COAP shall be submitted to the Court and to the Plan Administrator by Husband.

Paragraph 33 of the parties' MSA, titled "Costs of Enforcement," includes the following language:

> The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees and travel expenses, incurred by a party in the successful enforcement of any of the covenants or provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith shall be borne by the defaulting party.

On appeal, husband argues that wife's motion was not an action for enforcement, thus wife was not entitled to attorney's fees under Paragraph 33 of the MSA. Based upon our holding

above, we disagree, as wife's motion involved the "successful enforcement . . . of the covenants or provisions of [the MSA]." As we found above, the parties intended for the COAP to include a FERS annuity survivor benefit for wife. However, after receiving advice from counsel not involved in the drafting of the MSA that the agreement did not provide for a FERS survivor benefit for wife, husband refused to include this provision in his draft COAP or sign wife's version that included this term. Because husband refused to provide or sign a COAP with this term, a term that the parties had agreed upon, wife was forced to file a motion requesting that the circuit court enter her draft COAP. Based upon the specific facts of the instant case, we conclude that wife's motion was an enforcement action, as she filed the motion to compel husband's compliance with one of the provisions of the MSA—the survivor benefit contained in the agreement that, as reflected in our holding above, the parties intended to apply to husband's FERS annuity.[7] See Jones, 68 Va. App. at 107 ("Enforcement is defined as '[t]he act or process of compelling compliance with a . . . decree or agreement.'" (quoting Enforcement, Black's Law Dictionary (9th ed. 2009)).

Further, wife was also entitled to the attorney's fees associated with the preparation of the COAP. Under the terms of the MSA, husband was responsible for the preparation of the COAP, and he refused to prepare or sign a COAP with the FERS annuity survivor benefit, which we

---

[7] In making his argument that wife's motion was not a motion for enforcement, husband places emphasis on wife's request made in her motion to enforce that the circuit court compel husband to execute an addendum explicitly granting her a survivor benefit in connection with the FERS annuity. Husband argues that this request demonstrated that wife's motion was an action to add terms to the MSA and not an action to enforce the current terms of the MSA. However, the circuit court did not order husband to sign the addendum, did not rely on this addendum in its ruling, and did not enter the addendum as part of the parties' MSA. Based on the court's actions regarding the addendum, we conclude that wife's request concerning the proposed addendum does not provide support for husband's assertion that her motion was one to modify rather than enforce the agreement—because the addendum was not entered, no such modification occurred.

conclude was an agreed-upon term of the MSA. Thus, wife was entitled to the attorney's fees for the preparation of the COAP as a successful enforcement of a provision of the MSA.

Because wife successfully enforced a provision of the MSA, we conclude that the circuit court did not err in awarding wife attorney's fees for the preparation of the COAP and her motion to enforce pursuant to Paragraph 33 of the MSA.[8]

### Attorney's Fees on Appeal

Both husband and wife request that this Court award attorney's fees and costs incurred on appeal. As noted above, Code § 20-109(C) provides that in cases where the parties have executed a property settlement agreement prior to the entry of a final decree of divorce, "no decree or order directing the payment of . . . counsel fee[s] . . . shall be entered except in accordance with that stipulation or contract." Like the proceeding in the circuit court, this appeal is an enforcement action. Under the terms of the parties' MSA, wife is entitled to attorney's fees for the successful enforcement of any provision of the MSA. Therefore, wife is entitled to appellate attorney's fees under the agreement as the prevailing party. Accordingly, this Court remands this matter to the circuit court to determine what fees wife is entitled to under the terms of the MSA.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court granting wife's motion to enforce the final decree and its entry of the COAP. We also affirm the court's award of attorney's fees, and remand for a determination of appellate attorney's fees.

                                                        Affirmed and remanded.

_____

[8] Husband finally argues that the circuit court erred in not awarding him attorney's fees for defending wife's motion. Because we conclude that wife was entitled to attorney's fees for her successful motion to enforce pursuant to the parties' MSA, we find no error in the circuit court's denial of husband's request for attorney's fees.